(June 15, 1907.)

JOHN E. WHITE et al., Respondents, v. MOSES B. WHIT-COMB et al., Appellants.

[90 Pac. 1080.]

EXTENSION OF TIME TO PREPARE STATEMENT—NOTICE OF APPLICATION FOR—APPEAL FROM JUDGMENT—INSUFFICIENCY OF EVIDENCE TO SUPPORT—WHEN INSUFFICIENCY OF EVIDENCE MAY BE CONSIDERED ON APPEAL FROM JUDGMENT—AND WHEN MAY BE CONSIDERED ON APPEAL FROM ORDER DENYING NEW TRIAL—IMPROPERLY UNITING CAUSES OF ACTION—MISJOINDER OF PARTIES DEFENDANT—DEMURRER TO COMPLAINT—TOWNSITE ON PUBLIC DOMAIN—HOMESTEAD CLAIM-ANTS—DECISION OF SECRETARY OF INTERIOR—FINDINGS OF FACT BY—ACTION IN EJECTMENT.

1. Under the provisions of section 4892, Revised Statutes, the respondent is not entitled to notice of application by appellant for an extension of time in which to prepare and file statement of the case.

2. Under the provisions of section 4807, the insufficiency of the evidence to support the decision cannot be considered on an appeal from the judgment unless the appeal is taken within sixty days after the rendition of the judgment.

3. Under the provisions of said section, an appeal may be taken from an order denying a motion for a new trial within sixty days

after the order is made and entered in the minutes of the court
or filed with the clerk, and where the question of the insufficiency
of the evidence to support the verdict or decision is properly raised,
it may be determined on an appeal from such order, although the
appeal from the judgment is not taken within sixty days after its
rendition.

4. Under the provisions of section 4169, Revised Statutes, a plain-
tiff may unite several causes of action in the complaint to recover
specific real property, with or without damages, for withholding the
same or for waste committed thereon and the rents and profits
thereof, where the same judgment is asked against all of the de-
fendants.

5. Under the provisions of said section, where a number of
parties have at divers times, and without concert of action or
collusion, gone upon a certain tract of land and each taken sever-
ally a part thereof and erected improvements thereon, and one or
more of the parties have individually and on their own account
removed certain improvements placed thereon by himself, a cause
of action for such removal against such defendant cannot be joined
with an action against all of the defendants for a restitution of
the entire premises.

6. The demurrer to the complaint should have been sustained,
on the ground that several causes of action were improperly united,
and the plaintiff given permission to amend his complaint and to
set forth the causes of action upon which he relied.

7. Where the secretary of the interior under a contest proceeding
between W. and the probate judge on behalf of townsite claimants
has found as a fact that W.'s claim to the land in controversy
was prior to that of the townsite claimants, this court would not
be justified in holding that W. held the title thereto procured from
the government as trustee for the townsite claimants.

8. Under the provisions of section 2387, Revised Statutes of the
United States, land settled upon, occupied and used for townsite
purposes and for trade and business is not subject to entry under
the homestead laws of the United States.

9. Where one party has acquired the legal title to property to
which another has the better right, a court of equity will convert
him into a trustee of the true owner, and compel him to convey
the legal title to the equitable owner.

10. In this matter, the secretary of the interior has found as
a fact that W.'s claim to said land was prior to that of the town-
site claimants and for that reason this court would not be justified
in holding that W. held said legal title as trustee for the townsite
claimants.

(Syllabus by the court.)

APPEAL from the District Court of First Judicial District for Kootenai County. Hon. Ralph T. Morgan, Judge.

Action in ejectment and for damages. Judgment for plaintiff. Modified.

Albert Allen and John P. Gray, for Appellants.

If the land in controversy was selected as a site for a city or town, or occupied for townsite purposes, or occupied for business and trade, the homestead and pre-emption laws did not apply to the same, and did not authorize the officers of the land department to permit an entry thereon, or to issue a patent therefor. (19 Stats. at Large, 392; 6 Fed. Stats. Ann. 353.)

Where one party has acquired the legal title to property to which another had the better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title. (*Stark v. Starrs*, 6 Wall. 402, 419, 18 L. ed. 925; *John v. Towsley*, 13 Wall. 72, 85, 20 L. ed. 485.)

It is clear that the land department totally ignored the fact that White had claimed and possessed the land entirely south of the railroad track, and not including any portion of the land in dispute up to and until the time he made a homestead entry thereon on November 27, 1895.

Notwithstanding the fact that the acting secretary found that the buildings had been moved off the right of way and upon the land in controversy long before White made his homestead entry, and that it was shown on the public map that a townsite existed thereon, the officers of the land department allowed White's entry, and awarded him a patent for the land, including the buildings and improvements of the value of many thousands of dollars, placed thereon by the town occupants. By this erroneous decision of the law the officers of the land department have given to Mr. White a title through the patent, which in equity and good conscience, and under the laws of the United States, should have gone to the probate judge, to be held by him in trust for the benefit

of the occupants of the town. (*Burfenning v. Chicago etc.  Ry.*, 163 U. S. 321, 41 L. ed. 175, 16 Sup. Ct. Rep. 1018.)

The map of the public surveys for that township had been exhibited to the officers of the land department on the trial, and that map showed on its face that the townsite of Clarks Fork existed thereon at the time of the survey in the field. In that respect it is identical with the case of *Morton v. Nebraska*, 21 Wall. 660, 22 L. ed. 639.

The laws of Congress prohibiting the acquiring of title by pre-emption and homestead to lands included within the limits of an incorporated city or town, or within the limits of land selected as a site for a city or town, and to lands occupied for the purposes of business and trade and not for agriculture, were framed with a view to protecting the townsite settlers on the public lands from just the kind of a claim that the plaintiffs assert in this case. (*Atherton v. Fowler,* 96 U. S. 519, 24 L. ed. 732.)

H. M. Stephens and F. B. Kinyon, for Respondents.

The appellants were entitled to notice of an application for extension of time to file a statement on motion for a new trial and appeal independent of statute. (*Peter v. Kalez*, 11 Idaho, 554, 559, 83 Pac. 526; *Sandstrom v. Smith*, 11 Idaho, 779, 84 Pac. 1060; *Swartz v. Davis*, 9 Idaho, 238, 74 Pac. 800; *Stickney v. Hanrahan*, 7 Idaho, 424, 63 Pac. 189.)

The court cannot consider the sufficiency of the evidence in this case, so far as consideration thereof has any tendency to support any error assigned by the appellants, for the reason that the appeal herein was not taken within sixty days after the rendition of the judgment and decree appealed from. (Rev. Stats. 1887, sec. 4807; Sess. Laws 1899, p. 273; *Moe v. Harger*, 10 Idaho, 194, 196, 77 Pac. 645; *Cunningham v. Stoner*, 10 Idaho, 557, 79 Pac. 228; *Mahoney v. Board of Commrs.*, 8 Idaho, 377, 69 Pac. 108; *Brady v. Linehan*, 5 Idaho, 738, 51 Pac. 761; *Young v. Tiner*, 4 Idaho, 274, 275, 38 Pac. 697; *Holt v. Spokane etc. Ry. Co.*, 3 Idaho, 703, 35 Pac. 39.)

One action may be maintained against several parties defendant when they are upon the land wrongfully, or are trespassers, whether they hold jointly or severally. (*Andrews v. Carlile,* 20 Colo. 372, 38 Pac. 466; *Cunningham's Lessee v. Bradley,* 26 Ga. 238; *Williamson v. Snowhill,* 13 N. J. L. 23, 22 Am. Dec. 496; *Marshall v. Wood,* 5 Vt. 250; *Stuart's Heirs v. Coalter,* 4 Rand. 74, 15 Am. Dec. 731; Idaho Rev. Stats. 1887, secs. 4102, 4103, 4169; *Brady v. Linehan,* 5 Idaho, 739, 15 Pac. 761; *Tew v. Henderson,* 116 Ala. 545, 23 South. 128; *Stevens v. Home Sav. & Loan Assn.,* 5 Idaho, 741, 51 Pac. 779, 986; *Burke Land etc. Co. v. Wells, Fargo & Co.,* 7 Idaho, 42, 60 Pac. 87; *Taylor v. Bartholomew,* 6 Idaho, 505, 506, 56 Pac. 325; *Frost v. Alturas Water Co.,* 11 Idaho, 294, 81 Pac. 996; *Lewis v. Hinson,* 64 S. C. 571, 43 S. E. 15; Pomeroy's Code Remedies, sec. 295; 7 Ency. of Pl. & Pr. 312, and authorities there cited; *Curtis v. Sutter,* 15 Cal. 260.)

The joining of causes of action for possession and damages in the same complaint is not a misjoinder. (*Langsdale v. Woollen,* 120 Ind. 16, 21 N. E. 659; 10 Ency. of Law, 2d ed., 538; Rev. Stats. 1887, secs. 4169, 4541.)

If the item as to Gordon Dougharty and wife is not recoverable in this action under the statute, which makes his trespass a part of the cause of action for the possession of real property, then the remedy is by the court disregarding it and modifying the judgment.

As to trespassers, the plaintiff may bring a single cause of action against several defendants relative to a single, separate or distinct tenement or parcel of land, if his title as to all of the defendants is the same. (7 Ency. of Pl. & Pr. 312; Newell on Ejectment, sec. 44; *Beard v. Piedery,* 3 Wall. 479, 483, 18 L. ed. 88.) That the defendants in this action are trespassers there can be no doubt. (11 Jaggard on Torts, 660.)

Under the statute (section 4169), the action for possession and for damages for withholding the possession and for waste may be joined. The complaint would not be demurrable for misjoinder of causes of action. (*Fox v. Rogers,* 6 Idaho, 715, 716, 59 Pac. 538.)

The judgment of the interior department was and is *res adjudicata* of all questions herein involved. (*James v. Germania Iron Co.*, 107 Fed. 597, 46 C. C. A. 476.)

All questions of fact and all questions of mixed law and fact involved, or which might have been presented in a contest in the interior department and determined, expressly in finding of facts or by the issuance of the patent, are conclusive upon the courts, in the absence of fraud practiced upon the complaining party or upon the land officers, or fraud in which the officers of the interior department participated. (*Shepley v. Cowan*, 91 U. S. 330, 23 L. ed. 424; *French v. Fyan*, 93 U. S. 171, 172, 23 L. ed. 812; *United States v. Throckmorton*, 98 U. S. 61, 25 L. ed. 93; *Vance v. Burbank*, 101 U. S. 514, 25 L. ed. 929; *Marquez v. Frisbie*, 101. U. S. 476-478, 25 L. ed. 800; *United States v. Atherton*, 102 U. S. 372, 374, 26 L. ed. 213; *Quinby v. Conlan*, 104 U. S. 420, 26 L. ed. 800; *Steele v. Smelting Co.*, 106 U. S. 447, 27 L. ed. 226, 1 Sup. Ct. Rep. 394; *Baldwin v. Stark*, 107 U. S. 463, 27 L. ed. 526, 2 Sup. Ct. Rep. 474; *Lee v. Johnson*, 116 U. S. 48, 29 L. ed. 570, 6 Sup. Ct. Rep. 249; *Sanford v. Sanford*, 139 U. S. 647, 35 L. ed. 290, 11 Sup. Ct. Rep. 667; *Stewart v. McHarry*, 159 U. S. 643, 40 L. ed. 290, 16 Sup. Ct. Rep. 117; *De Cambra v. Rogers*, 189 U. S. 119, 47 L. ed. 734, 23 Sup. Ct. Rep. 519; *James v. Germania Ins. Co.*, 107 Fed. 597, 46 C. C. A. 476; *LeFevre v. Amonson*, 11 Idaho, 45, 81 Pac. 71; *Wiseman v. Eastman*, 21 Wash. 169-177, 57 Pac. 398; *State v. Batchelder*, 5 Minn. 223 (Gil. 178), 80 Am. Dec. 410.)

The courts cannot, and will not, sit in review of the adjudications of the interior department, or inquire into the extent of the inquiry made by said department, or as to the weight or sufficiency of the evidence, or the nature or extent of consideration given the evidence in the absence of fraud. (*Rogers v. De Cambra*, 132 Cal. 502, 60 Pac. 863, 64 Pac. 894; *Wiseman v. Eastman, supra; Lawrence v. Potter*, 22 Wash. 36, 60 Pac. 147; *Gray's Harbor Co. v. Drum*, 23 Wash. 709, 63 Pac. 530; *Small v. Rakestraw*, 28 Mont. 413, 104 Am. St. Rep. 691, 72 Pac. 746; *Parsons v. Venzke*, 4 N. Dak. 452, 50 Am. St. Rep. 669, 61 N. W. 1036.)

Settlement, occupancy and assertion of claim, as found by the interior department, by respondents ˎupon unsurveyed lands of the United States cut off all claims subsequent to the date of such settlement. (1 U. S. Supp. Rev. Stats., 282, 283; *Sturr v. Beck,* 133 U. S. 541, 33 L. ed. 761, 10 Sup. Ct. Rep. 352, 353; *N. P. R. Co. v. Smith,* 171 U. S. 260, 43 L. ed. 157, 18 Sup. Ct. Rep. 794; *Nelson v. N. P. R. Co.,* 188 U. S. 108, 47 L. ed. 406, 23 Sup. Ct. Rep. 302, 308; *Baker v. Biggs,* 15 L. D. 41; *Melder v. White,* 28 L. D. 412; *John T. Wright,* 32 L. D. 525.)

The settlement of the respondents authorized the claim and entry for the whole quarter section. (*Quinby v. Conlan,* 104 U. S. 423, 26 L. ed. 800.)

No entry could have been made by respondent John E. White for anything less than a legal subdivision of forty acres or a lot according to the government survey. (U. S. Rev. Stats., sec. 2289, as amended in 1891; *Warren v. Van Brunt,* 19 Wall. 652, 22 L. ed. 219; *Payne Townsite Co. v. Mick,* 18 L. D. 223; Instructions, 32 L. D. 239; *John T. Wright,* 32 L. D. 524.; *Ferguson v. McLaughlin,* 96 U. S. 175, 24 L. ed. 624.)

. There is no authority for dividing a legal subdivision between a homesteader and townsite claimants except by mutual consent of all interested parties. (U. S. Rev. Stats., sec. 2274; *Dunegan v. Sparks,* 32 L. D. 313, 314; *Hall v. Mitchell,* 24 L. D. 584; *Hopkins v. Wagner,* 23 L. D. 400.)

Mistake or fraud must be proven by more than a preponderance of the evidence. The evidence must sustain allegations of mistake and fraud to a degree which is beyond reasonable controversy. (*Maxwell Land Grant Case,* 121 U. S. 325, 379, 30 L. ed. 949, 7 Sup. Ct. Rep. 1015; *Colorado Coal & Iron Co. v. United States,* 123 U. S. 307, 31 L. ed. 182, 8 Sup. Ct. Rep. 135; *United States v. Hancock,* 133 U. S. 193, 33 L. ed. 601, 10 Sup. Ct. Rep. 264; *United States v. Budd,* 144 U. S. 154, 36 L. ed. 384, 12 Sup. Ct. Rep. 577; *Thallman v. Thomas,* 111 Fed. 277, 49 C. C. A. 317.)

SULLIVAN, J.—This is an action in ejectment to recover possession of the N. W. ¼ of the S. W. ¼ and lots 5, 6 and 7, of section 2, Twp. 55 N. of R. 2 West of B. M., in Kootenai county. An amended complaint was filed and will hereafter be referred to as the complaint.

After alleging the ownership, in fee, in the plaintiffs, it is alleged that the defendants are wrongfully and unlawfully in possession of small portions of the tracts above described, and have used and occupied the same for a long period of time; that the premises were acquired by plaintiffs by homestead entry, final proof being made on the 27th of November, 1897, and that a patent was issued therefor on July 14, 1903; that the defendant, Gordon Dougharty, removed from a portion of said premises lasting improvements of the value of $3,000, and judgment is prayed against all of the defendants for the recovery of the possession, and for $250 per month damages from November 27, 1897, for the use and occupation of the premises, and for a separate judgment against said Dougharty for the sum of $3,000 for buildings alleged to have been removed by him from said premises.

The defendants demurred to the complaint, first, on the ground of misjoinder of parties defendant, in that it appeared on the face of the complaint that the defendants severally occupied distinct and separate tracts or portions of said premises, and that defendants do not occupy any portion thereof jointly, and that plaintiffs demand judgment against all of the defendants jointly for the sum of $250 per month from November 27, 1897, for the use and occupation of said premises, while it appears that the defendants occupy small tracts of said premises in severalty, and not jointly, and that one of said defendants cannot be held for the use and occupation of the others, and that a cause of action against defendants in ejectment and for the use and occupation of said premises is joined against the defendant Dougharty for wrongfully removing improvements from said premises of the value of $3,000; secondly, that several causes of action have been improperly united in this: That it appears on the face of the complaint that the defendants sev-

erally occupied separate and distinct parts or portions of that land described in said complaint, and do not occupy any part or portion thereof jointly; and that the plaintiffs claim to recover from the defendants jointly $250 per month for the use and occupation, whereas said complaint shows that the defendants occupy small parts or tracts in severalty and separately and not jointly; and it also appears that the cause of action in ejectment against all of the defendants and the cause of action in tort against the defendant Dougharty for removing improvements, are improperly joined; and thirdly, that the complaint described four certain forty-acre tracts of land, and does not specify or describe the small lots or tracts occupied by the defendants, or specify in which of the four forty-acre tracts of land described the small portions occupied by the defendants are situated, and does not describe from what portion of the land the defendant Dougharty removed permanent and lasting improvements; and fourthly, that said complaint on its face does not state facts sufficient to constitute a cause of action against the defendants, or either of them.

Said demurrer was overruled by the court. The defendants thereupon filed their answer and cross-complaint, whereby they admitted certain allegations of the complaint and denied others, and in the second paragraph of the answer they denied that they, or either of them, are now, or ever have been, in possession of said lots 5, 6 and 7 or any part thereof, or that they have been in possession of said N. W. ¼ of the S. W. ¼ of said section 2 lying south of the right of way of the Northern Pacific Railroad and east of the county road, and disclaim all interest therein; and deny that the plaintiffs, or either of them, are now, or ever were, the owners in fee or otherwise, or entitled to the immediate or exclusive possession or any possession of any part of said lands, except said lots 5, 6 and 7, and that part of the N. W. ¼ of the S. W. ¼ of said section, lying south of the right of way of the Northern Pacific Railroad and east of the county road; and admit that the defendants severally and each for himself has used and occu-

pied portions of said N. W. ¼ of the S. W. ¼ of said section for a long period of time.

In their cross-complaint the defendants allege, among other things, that in the year 1884, while said premises were a part of the unsurveyed public land of the United States, and long before any settlement was made by the plaintiffs thereon, that the part of the premises above described as the N. W. ¼ of the S. W. ¼ of said section 2 was settled upon, occupied, appropriated and used as a townsite for townsite purposes, and for purposes of trade and business, and was then and ever since has been known as the town of Clarks Fork; that said town then contained, and ever since has contained, a population of about one hundred inhabitants, and then contained, and ever since has contained, a public railroad depot, a United States postoffice, hotels, saloons and residences; that said town was and is situated at the point where the Northern Pacific Railroad crossed the Clarks Fork of the Columbia river, and at all times was and is the center of the shipping and supply point of a large area of country in which the business of lumbering, mining and farming are carried on; that the defendants, and each of them, are now residents and occupants of said town, and that they and their grantors and predecessors in interest have been residents and occupants of said town ever since long before the plaintiffs, or either of them, settled upon said land; that on November 17, 1890, the plaintiff John White was station agent of the Northern Pacific Railway Company at said town of Clarks Fork; that he claimed one hundred and sixty acres of land lying south of the Northern Pacific Railroad track, and that he marked the boundaries thereof on the ground and erected a dwelling-house thereon, and he and his wife have since resided in said house; that said one hundred and sixty acres of land so claimed and the boundaries so marked included within its boundaries that part of what is known as the N. W. ¼ of the S. W. ¼ of said section 2 lying south of said railroad right of way, and east of the county road, and contained five and ninety-four hundredths acres of said forty-acre tract, and that said plaintiff did not at any time prior

to the twenty-seventh day of November, 1895, claim any portion of said forty-acre tract other than the part lying south of said railroad right of way and east of the county road; and then proceeds to set up the facts showing what was done thereafter by the occupants of said land, and avers that said premises was settled upon and occupied for purposes of trade and business, and as and for a townsite, and also alleges that on the twenty-seventh day of November, 1895, the plaintiff, John White, with intent to cheat and defraud the said townsite occupants and to obtain title to said lots, buildings and improvements of said town occupants, made a homestead entry for the lands described in the complaint, falsely claiming that the same was unappropriated public lands.

It was also alleged that on the eighth day of January, 1896, the probate judge of said county entered a contest against the homestead entry of White in so far as the same included said N. W. ¼ of the S. W. ¼ of said section 2; that said contest was decided by the register and receiver in favor of said White; that an appeal was taken from their decision to the commissioner of the general land office, who affirmed the decision of the register and receiver; and that an appeal was taken from the decision of said commissioner to the secretary of the interior, who affirmed the decision of the commissioner and awarded said land to said White; that thereafter the secretary of the interior ordered a further hearing and additional testimony to be taken in said matter, which was done, and thereafter the secretary of the interior finally decided said contest in favor of said White and awarded him a patent for said lands.

Defendants further allege that the undisputed facts show that said lands upon which said townsite was situated were occupied and used as a townsite for purposes of business and trade and not for agriculture; and thereafter, notwithstanding the law and facts, it was held by the secretary of the interior that said land was subject to entry under the homestead laws, and allege that said decision was erroneous and contrary to law; and that by said erroneous decision, White wrongfully and illegally obtained title to said townsite, when

in equity and good conscience, under the laws of the United States the patent should have issued to said probate judge in trust for the several use and benefit of the occupants thereof according to their respective interests, and pray for judgment to the effect that the plaintiffs hold the legal title to said lands included within the limits of said townsite in trust for the several use and benefit of the occupants thereof.

The plaintiffs answered the cross-complaint and denied nearly all of its allegations, and attached to their answer the decision of the secretary of the interior.

Upon the issues thus made, the cause was tried before the court without a jury, and judgment was entered in favor of plaintiffs and against the defendants, adjudging the plaintiffs to be the owners in fee of all of the land described in the complaint, and that they were entitled to recover the same or any part thereof held by the defendants or either of them, and also adjudging that plaintiffs recover of the defendants severally certain sums for the use or occupation of the premises occupied by them severally, and judgment against the defendant Dougharty and wife for the sum of $2,510 for use and occupation and the value of certain improvements removed by them, and quieted the title in the plaintiffs and for costs of suit.  A motion for a new trial was made and overruled.  This appeal is from the judgment and order overruling the motion for a new trial.

Counsel for respondents have made a motion to strike the statement of the case from the transcript upon the grounds that the same was not filed or served within the time required by law and because the trial judge did not have jurisdiction or authority to settle or certify the same.

It seems that the trial judge extended the time for the preparation, service and filing of the statement without notice to counsel for respondents, and it is contended under the provisions of section 4892 of the Revised Statutes that notice of all proceedings after a party has appeared in an action must be given, and that under the provisions of said section, the respondents were entitled to notice of the application for an extension of the time to file the statement.  Section 4892 is

as follows: "A defendant appears in an action when he answers, demurs, or gives the plaintiff written notice of his appearance or when an attorney gives notice of appearance for him. After appearance, a defendant or his attorney is entitled to notice of all subsequent proceedings of which notice is required to be given. But where a defendant has not appeared, service of notice or papers need not be made upon him unless he is imprisoned in the action for want of bail."

That section provides, among other things, that after appearance a defendant or his attorney is entitled to notice of all subsequent proceedings of which notice is required to be given. We have no statute requiring notice to be given on an application for an extension of time in which to prepare and serve a statement on motion for a new trial nor have we any rule of court to that effect, and for that reason the provisions of said section do not apply, and under our statute and rules no notice of such application is required to be given. This court held in *Peter v. Kalez,* 11 Idaho, 553, 83 Pac. 526, that the adverse party was entitled to notice of the time and place of the hearing of a motion for a new trial. That was on the ground that the statute clearly contemplates notice of hearing to the adverse party of a motion for a new trial.

It is also contended by counsel for the respondents that this court cannot consider the sufficiency of the evidence, for the reason that the appeal was not taken within sixty days after the rendition of the judgment, and bases this contention on the provisions of section 4807, Revised Statutes, as amended by Session Laws of 1899, page 273. That section provides that an appeal may be taken to the supreme court from a district court, from a final judgment within one year after the entry of the judgment, but an exception to the decision or verdict on the ground that it is not supported by the evidence cannot be reviewed on appeal from the judgment unless the appeal is taken within sixty days after the rendition of the judgment. It also provides, among other things, that an appeal may be taken from an order granting

or refusing a new trial within sixty days after the order is made and entered on the minutes of the court or filed with the clerk.

There are two appeals in this case: one from the judgment and one from the order denying the motion for a new trial. On the appeal from the judgment, as it was not taken within sixty days after its rendition, an exception to the decision on the ground that it is not supported by the evidence cannot be reviewed on this appeal; but as one of the grounds of the motion for a new trial was the insufficiency of evidence to support the decision or findings of the court, and the appeal from that order was taken within sixty days, in determining that appeal the question of the sufficiency of the evidence to support the decision of the court may be considered and determined.

It often occurs that there is a large amount of evidence introduced on the trial of a case, and that the stenographer is not able to transcribe his notes thereof until more than sixty days after the judgment has been rendered, and perform the other duties devolving upon him in the meantime, and in such cases to hold that the question of the sufficiency of the evidence could not be gone into unless the appeal was taken within sixty days of the rendition of the judgment, would require two separate appeals in case an appeal is taken from the order denying the motion for a new trial.

It has been the practice of this court, whenever the sufficiency of the evidence to support the decision is raised, to decide that question either when the appeal is taken from the judgment within sixty days after its rendition, or when the appeal is taken from the order denying a new trial within sixty days after such order is made. There is nothing in the contention that the sufficiency or insufficiency of the evidence cannot be considered on appeal from an order denying a new trial, unless the appeal from the judgment is taken within sixty days after its rendition.

In order that this case may be fully understood, we shall make a statement of many of the facts arising out of this controversy.

It appears from the record that in 1882 and 1883 the Northern Pacific Railroad was constructed through and over what afterward proved to be the N. W. ¼ of the S. W. ¼ of said section 2, before any of the parties hereto made settlement thereon, and that its track passes diagonally through said "forty," leaving a major portion on the north and the minor portion on the south side of the track, the station being located on the north side. · Said railroad company holds its right of way under the second section of the act of July 2, 1864 (13 U. S. Stats. 365). Such right of way is 200 feet on each side of the center of the railroad track, and the first improvements made at the said Clarks Fork station by the settlers were made under the impression that the railroad right of way was only 200 feet in width, or one hundred feet on each side of the center of the track.

· It appears that one Nagle located as a homestead in the year 1884 all that portion of the tract in controversy north of the railroad track; that he cleared, improved and cultivated the same; that afterward he established a general merchandise store thereon and continued to conduct the same up to the year 1889. In that year a discovery of mineral was made near said land, which caused some mining excitement, when Nagle had a portion of the tract in controversy, which was then included in what he claimed was his homestead, surveyed into lots and blocks. It appears that said lots and blocks in said plat commenced at a point 115 feet north of the center of the Northern Pacific Railroad track and that said lots were 110 feet deep; that he thereafter permitted other people to erect business buildings on the front row of lots, which buildings were erected on the right of way of the Northern Pacific Railroad Company, the owners believing that said right of way was only two hundred feet wide. The owners of such buildings continued in that belief up to some time in 1893, when the Northern Pacific Railroad Company asserted its claim to the right of way four hundred feet wide and leased the ground upon which all of the business houses at Clarks Fork were located to the respective owners of said houses. The owners of such buildings there-

after, in the years 1894-95, removed their buildings off from the railroad right of way onto the land in controversy.

In 1891 the respondent, John E. White, located a part of the forty-acre tract in controversy which was south of the Northern Pacific Railroad track and east of the wagon road running across said forty-acre tract, and commenced the erection of a building thereon. He laid no claim whatever to any land north of the railroad track and west of said wagon road. He established his residence on the tract so claimed by him in 1892.

It appears that the appellant, M. P. Whitcomb, located as a homestead a small portion of the tract in controversy south of the Northern Pacific Railroad track, and erected a house thereon and established his residence therein during 1892, and has continued to reside thereon. The government survey was extended over said land in 1893, and it appears that said tract of land remained from 1889 to 1893, with the store of Nagle, the hotel of Roberts, the saloon of Butler and other buildings located thereon, on the north side of the railroad track and on the right of way of the Northern Pacific Railroad Company, and the residence of White and the residence of Whitcomb on the south side of the railroad track. In the year 1894, the Northern Pacific Railroad Company refused to further lease its said right of way, and notified those having buildings thereon to move them off, which they did some time in the fall of 1894, except said Roberts, who continued to lease from the railroad company, and his place of business was continued on the railroad right of way.

Thus the matter stood until October 26, 1895, when notice was published that on and after the 27th of November, 1895, the official plats of said township would be on file in the local land office, and that said office would receive filings and entries for lands in said township on and after said date. On October 29, 1895, a petition was filed with the probate judge in and for Kootenai county, signed by ten persons claiming to reside on the tract in controversy, asking the probate judge to secure title to said tract as a townsite under the name of Clarks Fork. In pursuance of

said petition, the probate judge caused a portion of the tract in controversy to be surveyed into lots and blocks, streets and alleys. It appears that Nagle, Butler and Whitcomb had declared their intention to enter said land as a homestead, but they failed to exercise whatever right they claimed as settlers under the homestead laws within the statutory period, and it thus appears that those parties who were engaged in business on the tract in controversy intended to enter the same under homestead laws, and it was held by the secretary of the interior that those parties could not be asserting and maintaining a claim to the tract in controversy under the homestead laws and under the townsite laws at the same time, and the conclusion reached by the officers of the land department, to wit, the commissioner of the general land office and the secretary of the interior, was that White, having made his settlement and residence on said forty-acre tract in 1891, was the oldest claimant thereto, and entitled to enter the same under the homestead laws, and he was permitted to do so, and a patent for said land was finally issued to White.

It is first contended that the court erred in overruling the defendants' demurrer to the amended complaint. The grounds of the demurrer are above set forth. The first and second grounds are to the effect that it appears upon the face of the complaint that the defendants severally occupied distinct and separate portions of the premises, and did not occupy any portion thereof jointly, and judgment is demanded against all of the defendants jointly for $250 per month for use and occupation, and to this is joined the cause of action against the defendant Dougharty for wrongfully removing permanent improvements.

It is contended that there is nothing in the complaint to show that the defendants were in any manner acting jointly or in collusion in holding the several distinct parcels of land, and for that reason they could not be made jointly liable for the rental and use and occupation for the entire premises, and that if Dougharty, one of the defendants, wrongfully entered upon some portion of the land and re-

moved improvements therefrom, he could not legally be joined with the other defendants in an action of ejectment.

The cause of action against Dougharty for removing a building from said premises was not a cause of action against the other defendants, as they were in no manner connected with Dougharty in that transaction. The allegations against Dougharty on account of the removal of said building do not state a cause of action against any of the defendants except Dougharty, and so far as that is concerned, the demurrer to that cause of action might well have been sustained on the ground that it does not state facts sufficient to constitute a cause of action against Dougharty's codefendants. We conclude that the cause of action against Dougharty for the removal of said building is improperly joined with an action in ejectment against Dougharty and his codefendants, and that the complaint does not state a cause of action against all of the defendants on that point.

It appears from the judgment that the respondents are granted restitution from the defendants and each of them, and the plaintiffs are given judgment against Reed and wife for the sum of $1,010, that sum being the reasonable value of the use and occupation of the premises held and wrongfully detained by them; and from Gordon Dougharty and wife the sum of $2,510, that being the reasonable value of the use and occupation of said premises and the value of permanent improvements removed therefrom; and from the appellant J. B. Whitcomb the sum of $20; and judgment is entered against each of the other defendants severally in the sum of $10 for use and occupation of said premises, and for costs of suit taxed at $205.45, against each of the defendants separately and jointly.

It is contended by counsel for respondents that there is no misjoinder of parties defendant in this action, and in support of that contention cites subdivision 2 of section 4169, Revised Statutes, which is as follows:

"The plaintiff may unite several causes of action in the same complaint where they all arise out of: . . . . (2) Claims to recover specific real property, with or without damages for

the withholding thereof, or for waste committed thereon, and the rents and profits of the same.''

It will be observed under the provisions of that subdivision that the plaintiff may unite several causes of action in the same complaint when the action is for the recovery of specific real property, with or without damages for withholding thereof, or for waste committed thereon, or for rents and profits of the same. It is clear to us that the provisions of that subdivision authorize the uniting of the causes of action therein enumerated when they are all against the same party or parties. But in a case like that at bar, where one party is charged with removing a building from the premises sought to be recovered and damages prayed therefor, it appears that the other parties had nothing to do with such trespass or were not connected with it in any way, they cannot be held for it. And where it also appears, as it does in this case, that the parties have gone independently of each other upon said premises, and each taken on his own account and without the connivance or assistance of the others a lot or piece of land and erected a house upon it, and the other defendants had nothing whatever to do with it, damages for such trespass can only be recovered against the party thus settling upon such tract of land. Such causes of action cannot be united.

It appears in this case that the costs amount to something over $200, and a joint and several judgment is entered against each and all of defendants therefor. Supposing that more than one-half of those costs were made in procuring witnesses and establishing the alleged trespass of Dougharty for the removal of said building; it is not right that the other defendants who had nothing whatever to do with that matter should pay those costs.

It is clear that it was not intended by the provisions of said subdivision to authorize the uniting of causes of action for trespass or tort against one of the defendants and a cause of action for use and occupation of premises against each of the many defendants in this case with a cause of action for the restitution of said premises against all of the defendants. While the court erred in not sustaining the demurrer on

that ground, and should have required the plaintiff to amend, we take it for granted that the plaintiff would have amended by striking out the separate causes of action against the other several defendants for the use and occupation of parts of said premises by each of them, and would have proceeded with the case upon the cause of action in ejectment against all of the defendants. An action in ejectment like this may be sustained against several defendants so far as the restitution of the premises is concerned, but an action for damages against each of several defendants for separate and distinct torts or trespasses, requiring judgments to be entered separately against them, cannot be united with a cause of action based on ejectment against all of them. We shall, therefore, modify or set aside the judgment as to the tort or trespass of Dougharty for removing said building, and the separate judgment against each of the defendants for the use and occupation of said premises by each defendant, allowing the respondent a restoration of the premises without separate damages against the defendants severally for their trespass upon the land.

Referring again more particularly to the controversy in the land office, it appears that in 1893 the government survey was extended over said land, and the plat thereof was filed in the United States land office in that district in 1895, and the probate judge of said county was intending to enter said land as a townsite. But it appears that on the very day he presented his application, the respondent White had entered the land under a homestead entry, and the result was that a contest was entered in behalf of the townsite claimants which resulted in a decision in favor of White, and a patent thereafter issued to him. We have in the record the several decisions by the commissioner and secretary of interior in said matter, in which they find certain facts. They find that there were forty to fifty people living upon said tract of land at the time White made his entry, and that there were improvements thereon consisting of buildings, etc., of the value of seven or eight thousand dollars. It is also found that said land was not claimed as a townsite until after the survey was

extended over it, and it is also found that said White made his settlement on the southeast part of said forty in 1891, and for that reason, and for the further reason that the townsite claimants who had settled upon that forty-acre tract on the northerly side of the railroad had placed their buildings and improvements upon the railroad right of way, it was held that they could not establish a townsite claim based on settlement and improvements on the railroad right of way.

In our view of the matter, this decision is very technical, for if White had made his settlement upon the railroad right of way, believing it to be only one hundred feet wide, he certainly would have been entitled to enter the land if he was the first settler and claimant, for under the law the railroad company only had an easement over said land as long as they continued to use it for railroad purposes. The legal title thereof went to the entryman. As I understand from the record, White did not claim one-half of said forty—probably not more than one-sixth. He is now given the whole forty-acre tract regardless of the fact that the townsite claimants settled upon said land in perfect good faith prior to the time that White laid any claim to that part of said forty on the northerly side of the railroad. It might have been justice that the land department gave to the parties in its decision, but there was certainly no equity in it. The other two claimants to portions of said forty-acre tract waived their rights in favor of the townsite claimants, and in justice to all of the parties the townsite claimants should have been awarded the lots which they had settled upon and improved on the northerly side of the railroad.

It is contended by counsel for the appellants that as White did not claim any portion of the land north of said railroad track, and that as said townsite claimants had settled upon the same for business purposes and had established a United States postoffice, hotel, stores and saloons before White made any claim thereto, that under the provisions of section 2387 of the Revised Statutes of the United States, said land was set apart for townsite purposes, and not subject to entry for agricultural purposes. Said section is as follows: "When-

ever any portion of the public lands have been or may be settled upon and occupied as a townsite, not subject to entry under the agricultural pre-emption laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated."

It will thus be seen that the main question in this case is whether the land in controversy was within the limits of a townsite, or was selected as the site of a town, and whether it was used for the purposes of business and trade and not for agriculture at the time respondents settled upon the same and claimed it under the homestead laws. It is contended by counsel for appellants that said land was so selected and occupied for townsite purposes, for business and trade, prior to the settlement of White, and for that reason the homestead laws did not apply to the same, and did not authorize the officers of the land department to permit an entry thereof under the homestead laws, and for that reason the patent conveying the title to the respondent White was in trust for the occupants of said townsite.

If the forty-acre tract in question had been entered by the probate judge as trustee for the townsite claimants under the provisions of said section 2387 of the Revised Statutes of the United States, the title in fee to said railroad right of way would have passed to said trustee the same as it has to White. Under the provisions of the United States statutes, homestead entries cannot be made upon lands within the limits of the townsite or selected as a site for a city or town, and the main contention in this case is that as said tract of land on the northerly side of said railroad was occupied as

a townsite for townsite purposes and for business and trade, the homestead laws did not apply to the same, and did not authorize the officers of the land department to permit an entry thereon or to issue a patent therefor. (See 6 Fed. Stats. Ann., p. 353.)

Counsel contend that in such a case as the one at bar, the party to whom the legal title has been given holds it in trust for the townsite claimants, and cite *Stark v. Starrs*, 6 Wall. 402, 18 L. ed. 925, wherein Justice Field, in delivering the opinion, said: "These are only applications of the well-established doctrine that where one party has acquired the legal title to property to which another has the better right, a court of equity will convert him into a trustee of the true owner and compel him to convey the legal title," and in support of that proposition cite *Johnson v. Towsley*, 13 Wall. 72, 20 L. ed. 485; *Burfenning v. Chicago etc. Ry.*, 163 U. S. 321, 41 L. ed. 175, 16 Sup. Ct. Rep. 1018.

The principle of law contended for as laid down in those cases is not questioned, but the serious difficulty in this case is the finding of the land department of the government that White made settlement upon and has claimed said forty-acre tract since 1891, and that was prior to the date that said land was claimed as a townsite. If the land department had found that said land was settled upon, occupied and claimed as a townsite prior to the settlement and claim of White, and under that state of facts had given the title to White, this court would have been fully justified under the authorities cited in holding that White was trustee for the townsite claimants; but as the land department has found as a fact that White's claim and right was prior to that of the townsite claimants, we would not be justified in holding that White was trustee for them. The decision of the secretary of the interior in that contest case will be found in 28 Land Decisions, page 412. If, as a matter of fact, White settled upon said forty-acre tract and claimed it as a homestead prior to the time it was claimed as a townsite, under all decisions and holdings of the land department, White would have the prior right. We think that the facts found by the land de-

partment of the government in that matter are conclusive upon this court, and that under those facts we are not justified in holding that White holds the title as trustee for the townsite claimants.

We therefore conclude that the judgment in this case must be affirmed, in so far as it adjudges and decrees the plaintiff entitled to the immediate possession of the premises in controversy and for all costs necessarily incurred in establishing plaintiff's action in ejectment, and that it must be reversed as to that portion granting independent and separate relief and judgments against the several defendants separately and individually, either for use and occupation or for removal of buildings and waste. The cause will be remanded, with instructions and directions to the trial court to enter an amended and modified judgment in favor of the plaintiffs and against defendants for the possession and restitution of the premises as above indicated.

Costs of this appeal are awarded in favor of appellants.

Ailshie, C. J., concurs.

### ON PETITION FOR REHEARING.

#### (July 9, 1907.)

PER CURIAM.—The appellants have filed a petition for a rehearing in this case, and urge as a ground therefor that the decision of the commissioner of the general land office and of the secretary of the interior was based upon an erroneous view of the law applicable to the case, and not upon a finding drawn from disputed facts. In other words, counsel contend that the undisputed facts in this case were all with the appellants in their several contests before the land office and the department of the interior. An examination of the decisions as found in the record and also reported in land decisions, and cited in the original opinion herein, will disclose that the secretary found that White's settlement was prior to that of any of the townsite claimants. The decision of the land department seems to have turned upon

that point, and that finding is binding upon all courts in a controversy like this where it is sought to hold the patentee as a trustee or equitable owner for other claimants. We have given this matter a further consideration and examination since the filing of the petition for rehearing, and are satisfied that the opinion as originally announced disposes of the case, and the petition is therefore denied.

The respondents have also filed a petition for a modification of the judgment as to costs. They contend that the bulk of the record in this case is made up of the evidence produced by appellants, and that since the respondents' judgment has been affirmed as to the principal and main feature that the costs should at least be divided. As we view the case, the respondents should pay the costs of this appeal. They made it necessary for the appellants to prosecute their appeal in order to obtain the relief they have been granted. In doing so it was necessary for the appellants to bring up the whole record, and while it contains much that is irrelevant and immaterial, and has been encumbered with a great deal of useless matter, that is as much chargeable to the respondents as to appellants. We think the costs of this appeal should properly be borne by the respondents. The petition for modification of the judgment for costs is denied.