ALFRED BANZHAF and HAROLD BANZHAF, Plaintiffs and Respondents,

v.

THE SWAN COMPANY, Defendant and Appellant.

(No. 2271; Apr. 25, 1944; 148 P. 2d 225)

202

For the defendant and appellant there was a brief and oral argument by A. D. Walton and Ray E. Lee, both of Cheyenne, Wyoming.

For the plaintiffs and respondents there was a brief and oral argument by G. R. McConnell, of Laramie, Wyoming.

## OPINION

RINER, Justice.

Whether appellant or respondents shall be given a state lease upon certain lands situated in Albany County, Wyoming, and described as all of Section 16, Township 22 North, Range 77, West of the 6th Principal Meridian, is the ultimate question to be resolved in this litigation, and that question hinges upon whether the judgment of the District Court of Albany County reversing a decision of the State Board of Land Commissioners shall or shall not be disturbed.

This is a proceeding by direct appeal by the appellant, The Swan Company, seeking a review of the

judgment aforesaid. The Commissioner of Public Lands of this State awarded to respondents, Alfred and Harold Banzhaf, a lease of said land. Upon appeal to the Board of Land Commissioners, hereinafter usually referred to as the "Board," that award was set aside and a lease ordered issued to The Swan Company. From this action of the Board the Banzhaf's appealed to the District Court above mentioned pursuant to Section 91-306, W.R.S. 1931, and upon trial there the action of the Board was, as already stated, reversed and a lease ordered in favor of the present respondents. The land involved is, of course, State land and the parties to these proceedings filed conflicting applications therefor in the office of the Commissioner of Public Lands.

The Swan Company has held consecutive leases upon the land in controversy since the year 1922, the last lease expiring January 1, 1942. Until the lease now asked for was sought to replace the one thus terminated, there have been in the past no conflicting applications therefor, due possibly to the fact that heretofore The Swan Company held by lease from the owner thereof most of the land surrounding said Section 16, to-wit, Section 15, on the east, and Section 21 on the south, together with other lands. In March of the year 1941, the owner of this land thus leased to The Swan Company, sold it under purchase contract to one of the Banzhafs who thereafter made the application which now has resulted in this litigation. This Section 16 is unwatered and has recently been fenced by The Swan Company on the westerly, southerly and easterly boundaries. It adjoins on the north the west half of the southwest quarter of Section 9, Township 22 North, Range 77, West of the 6th P. M., which is deeded land owned by The Swan Company.

That company also owns the north half of said Section 9 and many other lands in the vicinity of said Section 16.

Both The Swan Company and the Banzhafs offer the same annual rental for the land in dispute. Both have actual and necessary use for the land though the testimony in the District Court and the proofs offered before the Board are in conflict on this point. It is asserted by witnesses on behalf of The Swan Company, and denied by those on behalf of the Banzhafs, that livestock can be moved from the west half of the southwest quarter of said Section 9, to the controversial Section 16. This conflict arises, it would seem, because of the existence of a ridge called the "Como Ridge" or "Como Bluff" which runs through the section last mentioned near its northerly line, and which is the southerly line of Section 9 aforesaid. The witnesses for the Banzhafs regard this ridge as impassable for livestock, while the testimony submitted for the Swan Company is that it is feasible and practical to move stock from its deeded land in Section 9 upon Section 16, and thus use it for grazing purposes.

The Swan Company's witnesses also consider the section in dispute as extremely important for winter range purposes in connection with the handling of its livestock. They say that because of its proximity to the arterial Lincoln Highway and the Union Pacific Railroad Company's main line railroad it affords a method of getting food to the livestock located thereon when the emergency of excessively inclement weather in winter-time intervenes. It is also claimed by The Swan Company, and the testimony it submitted is to that effect, that the Banzhafs take the stock of other persons on contract and pasture such livestock upon

the Banzhafs' lands, this being made possible through their purchase of the land formerly leased by The Swan Company as described above. It is urged that in consequence the Banzhafs do not need this Section 16.

Constitutional and statutory provisions of law relating to and which would appear to be controlling in this matter are:

Section 3 of Article 18, of the Constitution of Wyoming, provides:

"The governor, secretary of state, state treasurer, state auditor and superintendent of public instruction shall constitute a board of land commissioners, which under direction of the legislature as limited by this constitution, shall have direction, control, leasing and disposal of lands of the state granted, or which may be hereafter granted for the support and benefit of public schools, subject to the further limitations that the sale of all lands shall be at public auction, after such delay (not less than the time fixed by congress) in portions at proper intervals of time, and at such minimum prices (not less than the minimum fixed by congress) as to realize the largest possible proceeds. And said board, subject to the limitations of this constitution and under such regulations as may be provided by law shall have the direction, control, disposition and care of all lands that have been heretofore of may hereafter be granted to the state."

Section 91-113 W.R.S. 1931, provides so far as here pertinent:

"The board shall lease all state lands in such manner and to such parties as shall inure to the greatest benefit and secure the greatest revenue to the state. Except as herein provided, preference shall in all cases be given to applicants who are bona fide resident citizens of the state and to firms, associations or corporations authorized to transact business in the state, having actual and necessary use for the land and holding title to lands in the vicinity of the land

applied for, who offer to pay the highest annual rental for the use of the land for a term of five years; provided that an applicant who is the holder of an expiring lease, and has paid the rental when due, and has not violated the provisions of the lease, and is qualified under the provisions of § 91-109, shall have the right over and above all others to lease the lands covered by the expiring lease, to the extent that he may take the lease at the highest annual rental offered by any other applicant."

Section 91-109 W.R.S. 1931, as amended by Laws of Wyoming, 1935, referred to in the preceding section, reads:

"No person shall be qualified to lease state lands, except one who is the head of a family, or unless he or she has attained the age of twenty-one (21) years; but in no event may a person lease state lands unless he or she is a citizen of the United State, or has declared his or her intention to become a citizen of the United States, nor shall a firm, association or corporation be qualified to lease state lands unless it has complied with the laws of this state."

Section 91-306 W.R.S. 1931, governing appeals from the Board to the District Court is as follows:

"Any party who may feel himself aggrieved by the decision of the board of land commissioners rendered in any contest proceeding held before said board, may have an appeal from such decision to the district court sitting within and for the county in which the land in controversy is situated. All persons joining in the appeal shall be joined as appellants, and all persons having interests adverse to the parties appealing, or any of them, shall be joined as appellees; and upon said appeal being perfected, said contest proceeding shall stand to be heard and for trial de novo, by said court."

An inspection of these provisions of the fundamental and statutory law of this State as they concisely apply to the matter before us discloses that the Board of Land Commissioners is the only authority vested with the power to lease the section of land

in question. The Courts of this State have no such power. The Board is, by Legislative direction, required to lease the section aforesaid "in such manner and to such parties as shall inure to the benefit" to the State. There is no question involved here of "greatest revenue to the State" as both parties offer the same annual rental.

In State ex rel. Marsh v. State Board of Land Commissioners, 7 Wyo. 478, 53 P. 292, there was an order of court sought by original proceedings in mandamus to require the Board of Land Commissioners to enter into a lease with relator for certain school lands and to cancel a lease issued to another person for said lands. Declining to make such an order this Court said in the course of the opinion filed:

"The exercise of the power conferred upon the board to lease the lands of the State in the manner and to parties which shall inure to the greatest benefit and secure the largest revenue to the State, requires judgment and discretion. No inflexible rule is laid down for the guidance of the board in those matters. The judgment and discretion to be exercised is judicial in character, and in an application for the writ of mandamus it is not proper for the court to interpose its opinion and judgment in the place of that of the board, even if the conclusion which the latter has reached upon the facts should appear to have been erroneous."

Interpreting the decision of this Court in Cooper v. McCormick, 10 Wyo. 379, 69 P. 301, relative to Sec. 812, W.R.S. 1899, dealing with lease renewals by the Board, it was said in Baker v. Brown, 12 Wyo. 198, 74 P. 94:

"In Cooper v. McCormick, supra, we said in substance that the section vested the board with a wide discretion, which, however, was doubtless to be exercised reasonably rather than arbitrarily, and with a due regard to the rights of the lessee as well as the

interests of the State; but that the discretion ought not to be interfered with by the courts except in case of fraud or grave abuse resulting in manifest wrong and injustice."

In Miller v. Hurley, 37 Wyo. 344, 262 P. 238, where this Court reviewed a judgment of the District Court of Hot Springs County, which had affirmed an award of a State lease made by the State Board of Land Commissioners, the contention of the appellant, Miller, was that an appeal from the Board and a trial de novo, in the District Court, as directed in Section 91-306, supra, meant that the discretion of that Board was to be considered as "wiped out" completely, and that "the only discretion left in the case is the discretion" possessed by that Court as in the trial of an ordinary civil action, and also that its judgment "must grant a lease either to appellant or appellee" as aligned in that Court. Holding this contention untenable this language was used:

"In the first place, nowhere in the Constitution or statutes is the District Court, or a judge thereof, granted power to lease state lands. Both the Constitution and the statutes repose that power in the land board. In exercising such power, the land board exercises a wide discretion. (Citing cases). If, by the simple expedient of an appeal from the decision of the land board, that discretion can be taken from the board and vested in the District Court, as contended by appellant, then the discretion of the land board amounts to nothing on a contested case. It is an empty thing, a mere ignis fatuus.

"In the former decisions of this court above set forth, it has been held that the discretion of the land board is a substantial thing and cannot be interfered with by the courts except in case of fraud or grave abuse, resulting in manifest wrong or injustice. Yet if appellant's contention were upheld, it would be necessary to hold that the discretion of the land board, conferred on it by the constitution and statutes of

this state, and heretofore recognized by the decisions of this court, is completely wiped out by an appeal. We cannot concur in such contentions, but hold that *that discretion should be controlling except in the case of an illegal exercise thereof or in the case of fraud or grave abuse of such discretion.*" (Italics supplied).

There is some general language used by Mr. Justice Scott in Bucknum v. Johnson, 21 Wyo. 26, 127 Pac. .904, which would seem to run contrary to what was held in the Hurley case, supra, as italicized above. But, however that may we, we are convinced that the holding of the case last mentioned is the correct view and that the trial "de novo" as mentioned in Section 91-306, W.R.S. 1931, is simply limited to a determination on the part of the District Court whether on the facts proven there was "an illegal exercise" of the Board's discretion, a case of fraud, or a "grave abuse of such discretion." Unless one of these three elements should appear the action of the Board should not be disturbed.

In State ex rel. Marsh v. State Board of Land Commissioners, supra, it is indicated that:

"In the State of Colorado the constitutional provisions and statutory regulations concerning the disposition of State lands are in many respects quite similar to those found in our own State constitution and statutes,"

and the case of Routt v. Greenwood Cemetery Land Company, 18 Colo. 132, 31 Pac. 858, is particularly mentioned. Under a provision of the Constitution of that State (Art. 9, Sec. 9) reading, "The governor, superintendent of public instruction, secretary of state, and attorney general shall constitute the state board of land commissioners, who shall have the direction, control, and disposition of the public lands of the state, under such regulations as may be prescribed

by law" this language was used by the Court in the Routt case:

"But so long as the exercise of the power to sell such lands rests entirely in the discretion of the board, and its procedure complies with the substantial requirements prescribed, however much the court may differ from the board as to the wisdom of its action, until some showing is made that such action has been influenced or affected by fraud or collusion, it cannot interfere."

In Oregon it has been held, in the absence of proper authority, that decisions of a Board vested with power to dispose of State lands were not even reviewable by the Courts. In Corpe v. Brooks, 8 Ore. 222, the Court, discussing the status of the Board and its decisions, remarks that:

"This board was created by the state constitution and by it invested with the power to dispose of these state lands, and its powers and duties are such as are provided by law. It is composed of the governor, secretary of state, and state treasurer, and is a part of the administrative department of the government, and exercises its powers independent of the judiciary department, and its decisions are not subject to be reversed by the court. It occupies in this state the same relation to the state judiciary as the land department of the United States does to the United States courts, and their decisions have not been the subject of review by the United States courts."

See also Robertson v. Geer et al. State Land Board, 42 Ore. 183, 70 P. 614; DeLaittre et al. v. Board of Commissioners, 149 Fed. 800.

Similarly, where the Constitution of the State of Idaho provided (Sec. 7 of Art. 9) that "The Governor, Superintendent of Public Instruction, Secretary of State and Attorney General shall constitute the State Board of Land Commissioners, who shall have the direction, control and disposition of the public lands

of the state, under such regulations as may be prescribed by law," in Balderston v. Brady et al., 17 Ida. 567, 107 P. 493, the Court, discussing the powers of the Land Board in that State said:

"In many of the matters coming before the board in reference to state lands they must exercise their judgment and discretion, and it is a well-settled principle of law that in such cases the courts will not attempt to control or supervise the discretion vested in the officers of a co-ordinate branch of the government. We held to the same effect in Pierson v. State Board of Land Commissioners, 14 Idaho, 163, 93 Pac. 775. The finding of the board on the facts of any given matter of inquiry is final and conclusive (White v. Whitcomb, 13 Idaho, 490, 90 Pac. 1080; Id., 214 U. S. 15, 29 Sup. Ct. 599, 53 L. Ed. 889), but an error made in applying the law to the facts, or an erroneous construction of the law by the Land Department, may be reviewed and corrected by the courts. In Pierson v. Board, supra, this court said: 'If they (the board) act in a matter without jurisdiction, there is a remedy; if they misapply the law to the fact found, or in case of fraud, there is a remedy. * * *' "

In the later case from the same jurisdiction, Pike v. State Board of Land Commissioners, 19 Ida. 268, 113 Pac. 447, after referring to the constitutional provision quoted above, the court pertinently remarked concerning the Board in that State that:

"They are, as it were, the trustees or business managers for the state in handling these lands, and on matters of policy, expediency and the business interest of the state, they are the sole and exclusive judges so long as they do not run counter to the provisions of the Constitution or statute."

Under our own decisions and the cases cited and briefly reviewed from other jurisdictions possessing constitutional language concerning their land Boards quite like ours, as we have noted, it is apparent that the discretion of the Board whose decision is here involved should not lightly be over-turned.

Recurring to Sec. 91-113, W.R.S. 1931, once more and to the preference rights there granted to certain parties "over and above all others" it is plain that The Swan Company is authorized as a corporation to transact business in this State, having complied with its laws. It holds title not only to lands in the vicinity of Section 16 foresaid, but also adjoining said section. It offers, as before stated, to pay the same annual rental as do the Banzhafs. It held the lease which has just expired. So far as appears in this record it has paid the annual rental thereon when due and has never violated the terms of that lease. Relative to the question of actual and necessary use for the land, we may say, that while the evidence on that matter is in conflict, it is clear that the Board, in the exercise of its discretionary power, resolved that conflict in favor of The Swan Company. The same thing is true relative to the matter of the proposed lease inuring to the "greatest benefit" to the State.

After a careful examination of the record we are unable to see either that the Board illegally exercised its discretion, or gravely abused it. There is no fraud claimed or proven. The District Court made no findings of fact that would indicate that any of these three elements appeared in this record, and we do not think it could have correctly so found. Under the Constitution and statutory provisions of this State and our decisions interpreting them we do not find any other course left open to us except to announce our conclusion that the District Court was mistaken in its judgment now the subject of review. That judgment must, accordingly, be reversed with directions to affirm the action of the Board of Land Commissioners in award-

ing the lease upon the land in controversy to The Swan Company.

*Reversed.*

KIMBALL, C. J., AND BLUME, J., concur.