## BUCKNUM v. JOHNSON.
### (No. 662.)

Appeal and Error—Record—Presumption—Public Lands—State Lands—Lease—Appeal from State Land Board—Jurisdiction of District Court—Issues on Appeal—Judgment on Appeal—Disposal of School Lands—Contest—Patents to State—Prior Vested Rights.

1. Where, in a contest before the board of school land commissioners, the contestant sought the cancellation of a lease previously made by the board to another party, the contestant claimed to have acquired the right to a part of the land for a reservoir site; the land having belonged to the United States, and having been selected by the state in lieu of other lands, but the exact date of the state's selection did not appear in the record of the cause on appeal; *Held,* that the state's selection of the land would be presumed to have been made prior to the date of the lease.

2. An appeal to the District Court from the state land board is a proceeding purely of statutory origin, and brings into the District Court those questions which were or might have been raised before the board; the issues cannot be

enlarged, nor can the action be transformed into an equitable or common law action.

3. On an appeal from the state land board the District Court acts as a substitute for the board, and is limited to questions that had or may be presumed to have been passed upon by the board.

4. The statute providing for an appeal from the state land board authorizing the parties to conduct the appeal upon the original papers and affidavits or upon new and amended pleadings, and prescribing that the case shall stand for trial upon the evidence taken before the board, with a proviso that in the discretion of the court, additional evidence may be adduced on the trial, where the party desiring to introduce such evidence shall have given notice to the adverse party immediately after the perfection of the bill, of the offering of said evidence and the purport and nature thereof, and further prescribing that the case shall be heard and tried the same in all respects as civil cases are tried in said court; *Held,* that the trial upon the appeal includes the trial and determination of the issues of fact made by the pleadings, independent of the findings and determination of those issues by the board, whether such trial be had upon the evidence submitted to the board or upon new evidence as permitted by the statute.

5. The jurisdiction of the District Court on an appeal from the state land board is to try the case *de novo* on the facts, and the judgment to be rendered is not one of affirmance, reversal or modification as upon review on error, but a judgment based upon the findings of the court upon the evidence, uncontrolled by the findings of the board.

6. On an appeal to the District Court from a decision of the state board of school land commissioners in a contest seeking the cancellation of a state lease, the question to be determined by the court was the same as that which was presented to the board, viz: whether the state which had granted the lease should cancel it.

7. Where a contestant seeking the cancellation of a lease of state lands before the state land board claimed a prior vested right to a ditch and reservoir site upon the land prior to the issuance of patent to the state for the land; *Held,* that if the contestant had in fact such a vested right it would be no ground for setting aside the lease, in said contest proceeding, either by the board or by the court on appeal, for the lease would not be involved, but would be

subject to such prior vested right, and would be limited to the title conveyed to the state; whether such vested rights existed might be litigated in a proper forum and proceeding.

8. In the performance of its duties with reference to the leasing and disposal of state lands the state land board is not vested with either equitable or common law jurisdiction.

9. Where there was but one applicant for a lease to state school lands at the time a lease thereof was granted, the board was not required to pass upon any question other than the form and information contained in the application and evidence in support thereof as bearing upon the right of the applicant to the lease.

10. Where, in an application to lease state school lands, a question and the answer thereto appeared as follows: "State who, if anyone, occupies land within one mile of the tract applied for, giving section number, township and range? A. No. one," and the undisputed evidence in a contest seeking a cancellation of the lease, which had been granted upon the application, showed that the homestead of another party, including buildings, were situated within one mile of each quarter section of the land covered by the lease; *Held,* that it was the duty of the applicant to place the board in possession of the facts called for by the application, showing the true situation with reference to the homestead of the other party, since such information might have an important bearing on the amount of revenue obtainable for the lease, and, further, that the lease appeared to have been granted upon incorrect information as to the occupancy of such homestead.

11. The section of the statute (Comp. Stat. 1910, Sec. 618) which provides that any lease for state lands procured by fraud, deceit or misrepresentation, may be cancelled by the board upon proper proof thereof, is permissive and not compulsory, though it might be the duty of the board in a proper case to cancel a lease so procured.

12. Where the cancellation of a lease of state school lands is sought in a contest before the state board of school land commissioners on the ground that the lease was procured by fraud, deceit, or misrepresentation, in that the lessee untruthfully stated in the application for the lease that no one occupied land within one mile of the tract applied for; *Held,* that upon the proof submitted the board acts in a judicial capacity, and is not required to cancel the lease

unless damage to the state is shown to have been sustained in the way of rental or otherwise, where there had been no application of the contestant before the board to purchase or lease the land at the time the lease sought to be cancelled was granted.

13. In a petition filed by a third party with the state board of school land commissioners to contest a lease previously granted, petitioner claimed a preference right to the land in part on the ground of a vested water right and reservoir site. *Held,* that in the contest proceeding whether the contestant had such water right and reservoir site was a question without the jurisdiction of the board; and, further, that the cancellation of the lease was not necessary to protect any such right of the contestant existing at the time the patent had issued to the state, since the patent would be subject thereto, and the lease would be limited to the state's title.

14. Any vested right to a reservoir site upon public lands of the United States, acquired under Sections 2339 and 2340, Revised Statutes, U. S., and supplementary statutory provisions, prior to the selection and patent of such lands to the state would be protected by such statutes, independent of any recognition or want of recognition by the state land board, for the board could only deal with the title conveyed to it by the patent as construed and affected by the acts of Congress in effect at the time of the issuance of the patent.

15. Although the information furnished the state board of school land commissioners in an application for the lease of school lands with reference to the occupancy of land by other parties within one mile of the tract applied for was untrue, the board was not required to cancel said lease in a contest proceeding brought for such cancellation, in the absence of a showing that the state had been damaged by such untruthful information, or that the interest of the contestant had been injuriously affected thereby.

16. An offer to lease state land provided the state land board has the right to require the applicant to do so as a condition of recognizing certain claimed vested rights in the premises, was conditional upon the board having a right to require him to rent the land as a condition precedent to recognition of the vested right claimed, and was not an offer 'to pay the rental value fixed or to be fixed by the board, but tendered an issue for trial without the jurisdiction of the

board, except in so far as the alleged vested right might
be considered in fixing the rental value.

[Decided November 20, 1912.]              (127 Pac. 904.)

ERROR to the District Court, Natrona County; HON.
CHARLES E. CARPENTER, Judge.

Henry A. Johnson instituted a contest before the state
board of school land commissioners, seeking the cancella-
tion of a state lease granted and executed to Clark Beck
April 26, 1907, which lease had been assigned by Beck to
C. K. Bucknum. From the decision of the board refusing
to cancel the lease, the contestant appealed to the District
Court. The trial in the District Court resulted in a judg-
ment for the contestant ordering the cancellation of the
lease. The contestee, Bucknum, brought error. The mate-
rial facts are stated in the opinion.

*Norton & Hagens,* for plaintiff in error.

The state board is vested by statute with a wide discre-
tion with reference to leasing state lands, and the District
Court, on an appeal from the board, sits as a court of re-
view, to reverse, affirm or modify the decision of the board,
and not to entirely disregard such decision as if it were
vacated by the appeal. Sec. 656, Comp. Stat. 1910, must be
construed and harmonized with other statutes regulating
appeals from the board. Section 658 plainly indicates that
appeals from the board are not to be tried *de novo,* but are
to be tried upon the evidence taken before the board, the
original papers and affidavits and other records in the
case. Where the trial is *de novo,* the general rule, under
the modern chancery practice, where the decree is vacated,
is that the cause with all its incidents of pleading and evi-
dence, is presented unchanged to the appellate court, and
new issues cannot be introduced. (2 Ency. Pl. & Pr. 327;
Bank v. Harvey, 16 Ia. 141; Luthe v. Luthe, 12 Colo. 429;
Baier v. Humpall, 16 Neb. 127; Bishop v. Stevens, 31 Neb.
786.) Under our statute regulating this appeal the case is
not tried anew as upon original process. Such an appeal

differs from appeals from justice courts.  The appellate proceeding seems to have been considered as a mere proceeding for review in Cooper v. McCormick, 10 Wyo. 398. (See also Baker v. Brown, 12 Wyo. 205; State ex rel. Marsh v. Board, 7 Wyo. 489; Greenwood &c. Co. v. Routt, 17 Colo. 156.)

The evidence in the case fails to show that the land was occupied by the defendant in error under any color of title, that he had any improvements thereon, or that he had exercised any control over it to the exclusion of others, or had done any work on the pretended reservoir or expended money thereon.  His application for water rights do not state that the ditches did or would run through land in controversy, or that any portion of it would be irrigated, or that the proposed reservoir would include any part of it. In the notice of location of the reservoir filed with the state engineer, he does not attempt to locate the lands to be used for reservoir purposes.  But if he had claimed possession of the land, or had made improvements thereon by which he could claim color of title by reason of occupancy and improvements, he obtained no right which impaired the power of congress to withdraw the land from sale, or dispose of the same to other parties.  (Kimball v. Waite, 132 U. S. 35; Frisbie v. Whitney, 9 Wall. 187; Yosemite Valley Case, 15 Wall. 77; Wells v. Pennington Co., 2 S. D. 1, 39 Am. St. Rep. 759; Gibson v. Hutchings, 12 La. Ann. 545; Johnson v. Brew, 43 Am. St. 172.)  The evidence does not show any bad faith on the part of the land board in selecting the land, but it does show that at the time the Beck lease was granted, the board had no knowledge of the claims or pretensions of the defendant in error to the land in controversy.  The fact that an applicant owns lands within one mile of lands sought to be leased gives him no better right to a lease than any other party.  (State ex rel. Marsh v. Board, 7 Wyo. 478.)  If Beck had answered the question in the application as to the occupancy of land within one mile of the tract applied for by stating that

Johnson occupied land within that distance, and had described the land so occupied, there would have been no reason for the denial of Beck's application. The only restriction upon the leasing of state lands is that the board shall lease the lands for the greatest benefit to the state. There was no other application before the board when the Beck lease was granted. If the lease was granted under such circumstances as not to result to the greatest benefit to the state, the question could not be raised by defendant in error. (State ex rel. Marsh v. Board, supra.)

No amount of good faith or good intentions can give one color of title or the right of possession to the public domain. The fact that the United States land office refused to act when Johnson offered the maps of his proposed reservoir is conclusive that the state land board, when they selected the land and leased the same, were not aware that Johnson made any claim of right to possession of the land, or that he claimed any color of title. The fact that he filed his maps after the commencement of this contest proceeding is of no effect, since the title of the state vested prior to that time. The law of this case is fully covered in Caldwell v. Bush, 6 Wyo. 342, where the evidence of possession was much stronger than the evidence of Johnson's possession in the case at bar: In view of the constitutional provisions creating the land board, and the statutes governing its procedure, supplemented by the decisions of this court interpreting the same, the decision of the board should not be disturbed in the absence of fraud, or abuse of discretion on the part of the board.

No appearance for defendant in error at the time of hearing, but a brief had been filed in the cause on behalf of defendant in error by *W. R. Stoll*, April 7, 1911, then his counsel, contending substantially as follows:

On an appeal from the state land board to the District Court, it is the right of the appellant to have a trial *de novo,* but he may have a trial upon the original papers and affidavits. In this case the statute was fully complied with,

and as to the proceeding upon the trial there is no question in this case. No objection was interposed to the method of the trial, and no question was raised as to the propriety of that method. It is the duty of the courts to correct any abuse of discretion on the part of the land board when the matter properly comes before it, and on appeal the proper action for the court in order to correct such abuse is a reversal of the board's action. The statute clearly permits a trial *de novo,* plainly implying that the case is to be tried as if it first originated in the court. (2 Ency. Pl. & Pr. 324-325, 327; Ry. Co. v. Moody (Ala.), 44 So. 94; Turner v. Mach. Co. (N. C.), 45 S. E. 781; Stetson v. Bank, 12 O. St. 577; State v. Tall (Wis.), 14 N. W. 596; Dorr v. Birge, 5 How. Prac. 323; Jussen v. Board, 95 Ind. 567; Beltz v. Charleston Co., 17 S. C. 586; Cox v. Lindley, 80 Ind. 327; In re. Solomon's Est., 74 S. C. 189; Reid v. Fillmore, 12 Wyo. 72.)

Occupancy with relation to public lands, means physical possession of the lands by some person, although there be no record anywhere of it or color of title of the person so occupying. (Exploration Co. v. Gray &c. Oil Co., 112 Fed. 4; 190 U. S. 301; 47 L. C. P. 1064; Oil Co. v. Clark, 50 L. D. 550; Oil Co. v. Clarke, 30 L. D. 570; Exploration Co. v. Oil Co., 104 Fed. 20; Oil Co. v. Oil Co., 98 Fed. 673; Oil Co. v. Miller, 97 Fed. 681; Miller v. Chrisman (Cal.), 73 Pac. 1083; Moffat v. Gold Excav. Co., 33 Colo. 142; Weed v. Snook, 144 Cal. 439.)

One of the objects of the question in an application for lease as to improvements and occupancy of other lands within one mile is to ascertain whether any third party would be interested in purchasing the same, or might have a preference right to do so. The lease in question should have been cancelled because of the untruthful answer in the application and also because there was a preference right in the defendant in error. The defendant in error had a vested right to the land for a reservoir site, and this was plainly shown by the evidence.

SCOTT, JUSTICE.

This case was originally instituted as a contest before the State Board of School Land Commissioners · by Johnson, the defendant in error, on June 5, 1907, seeking the cancellation of a lease made and executed by the State to Clark Beck on April 26, 1907, and by him assigned with the approval of the board to the plaintiff in error on June 27, 1907, of the south half of the northwest quarter, the southwest quarter of the northeast quarter, the west half of the southeast quarter, the northeast quarter of the southeast quarter, and the northeast quarter of the southwest quarter of section 8, township 35 north, of range 82 west of the 6th principal meridian, and situated in Natrona County, Wyoming. The board upon hearing sustained the lease in favor of Bucknum, the assignee and plaintiff in error here, and dismissed defendant in error's contest, whereupon a motion for a rehearing was submitted by Johnson to and denied by the board and the case was appealed by him to the District Court of Natrona County. The case was tried in that court and the decision and judgment was for Johnson, the lease cancelled, and Bucknum brings the case here on error.

It was sought by Johnson to appropriate a part of the land in controversy for and as a part of a reservoir site. A part of the land included in the proposed site belonged to the United States and, as shown by the findings of the board, was selected by the state in lieu· of other lands after a part of the work on the proposed reservoir was done. The exact date of the selection does not appear in the record. It must, however, be assumed to have been made prior to the date of the lease, to-wit: April 26, 1907. It appears that an application for a permit to construct the reservoir and the Johnson supply ditch therefor by Johnson was filed in the office of and approved by the State Engineer on April 5, 1901. On January 20, 1904, Johnson filed notice in such office of the completion of the reservoir, and on December 2, 1903, he filed notice in that office of the

completion of the Johnson Supply Ditch to such reservoir. On November 29, 1904, application was made by Johnson for permit to divert and appropriate waters for supply of said reservoir, which application was approved by the State Engineer and notice of the completion of this ditch was received at the State Engineer's office on December 2, 1904, and within the time limited by the permit. On November 29, 1904, application for permit to use water for another proposed supply ditch for such reservoir was made to and granted by the State Engineer, and proof of the completion of this ditch was likewise filed in the Engineer's office within the time limited by the permit. In addition to the foregoing ditches, Johnson alleges and the evidence tends to show that up to the time of instituting this contest he had under permit, duly issued to conserve and use waters for domestic, mining, milling and irrigation purposes in that locality, constructed five additional reservoirs as a part of his irrigation plan and to be used in connection with the proposed reservoir site, the right to which is here in dispute. It further appears that no water impounded in the proposed reservoir has been drawn therefrom for the reason that up to the time of completing Supply Ditch No. 2 in the latter part of December, 1906, the reservoir did not contain sufficient water for that purpose, but since the completion of that ditch the reservoir does contain sufficient water for irrigation purposes, and by constructing a tunnel he will be enabled to irrigate his own land and supply water to others in that vicinity. It thus appears that the application of the water impounded in the reservoir for irrigation purposes has not been made.

There is some contention upon the briefs as to whether the District Court to which the case was appealed was vested with jurisdiction other than of review. There was no equitable jurisdiction involved nor did the trial involve the application of common law rules. The proceeding is one purely of statutory origin. The appeal brought into the District Court those questions only which were or

might have been raised before the board. The issues could not be enlarged nor could the action be transformed into an equitable nor a common law action. The District Court sat in the appeal as a substitute for the board and was limited on such appeal to questions that had or may be presumed to have been passed upon by the board. Speaking of such appeal, Section 656, Comp. Stat., says: "Said appeal shall stand to be heard and for trial *de novo* by said court," and Section 658, after providing and regulating the duties of the Commissioner, says: "The parties may conduct the appeal upon the original papers and affidavits in the case or upon new and amended pleadings, and such case shall stand for trial upon the evidence adduced before said board; *Provided,* That in the discretion of the court, additional evidence may be adduced on the trial; but the party desiring to introduce such evidence shall give notice to the adverse party or parties immediately after the perfection of the bill, of the offering of said evidence and stating the purport and nature thereof." The record shows that the statute regulating such appeal was not departed from in the matter of the trial. It was tried by the District Court upon the same pleadings and transcript of evidence sent up by the commissioner and upon additional evidence introduced upon notice duly served. It is provided by Section 660, Comp. Stat., as follows: "At the expiration of the time for the appearance of the appellees, the case is to be deemed ready for hearing; and it shall be heard and tried the same in all respects as civil cases are tried in said District Court; and an appeal from the judgment, finding and decree of said court shall lie to the Supreme Court the same in all respects as prescribed by law for appeals and proceedings in error from the District Courts to the Supreme Court of this state." This section must be construed in connection with Section 658, supra, and construing these together the conclusion seems irresistible that the trial upon the appeal includes the trial and determination of the issues of fact made by the pleadings independent of the findings

and determination of those issues by the board. Whether such trial be had upon the evidence submitted to the board or upon that and new evidence in addition thereto as permitted under the provision of Section 658, supra, makes no difference. The jurisdiction of the District Court on the appeal is to try the case *de novo* on the facts and its judgment is not one of affirmance, reversal or modification, as upon review upon error, but is based upon its finding upon the evidence, and is not governed by the findings of the board; and the court is in a sense substituted for the board to determine the matter in issue upon the facts. The question to be determined by the court is the same as that which was presented to the board, viz: whether the state which had granted the lease should cancel it.

The land here in controversy was occupied as a reservoir site and permit for the use of the water therefor, under the statute and the regulation of the State Engineer thereunder, which had been duly issued prior to the date of the lease in controversy. The entire plant was in course of construction, though not completed, at the time the land was selected and granted to the state. Section 2339 and Section 2340 supplementary thereto (U. S. Comp. Stat. 1901, p. 1437) are as follows:

"Sec. 2339. Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same way; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

"Sec. 2340. All patents granted, or pre-emption or home-steads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the preceding section." In addition to the foregoing sections the Act of Congress, March 3, 1891 (U. S. Comp. Stat. 1901, p. 1570, Sec. 2477), provided for the grant of a right of way for reservoirs, canals and ditches over public lands upon filing articles of incorporation, maps and statements in the land office. This act was by its terms, Sec. 20, made applicable to individuals as well as to corporations. The later Acts of Congress are cumulative to and an enlargement of Sec. 2339, supra. (Sec. 440, Weil on Water Rights.)

In the case here it is unnecessary to enter into a lengthy discussion of these sections of the federal statute or to determine whether Johnson had any right of way or easement in the land or not, for if there were a prior vested right to the ditch and reservoir site at the time of patent to the state that of itself would be no ground for setting aside the lease, for the latter would not be involved, but subject to any such prior vested right. In that sense the ditch and reservoir site do not conflict with the lease, for the latter would be limited to the title conveyed to the state and that title would be subject to Johnson's accrued water, ditch and reservoir rights, if any such had accrued. Whether such rights existed as here contended or not, the question could be litigated in a proper forum and proceeding. The jurisdiction of the land board is limited to the leasing and disposal of the state lands. In the performance of its duties it is vested with neither equitable nor common law jurisdiction. A contest for the right to lease land duly instituted before it, is a statutory proceeding. In the performance of its duties it is vested with certain discretionary powers which are limited and circumscribed in the matter of obtaining the greatest revenue for the lease or sale of such lands. This court said in State v. Commissioners, 7 Wyo. 478, 489, 490, 53 Pac.

292, 295, which was a mandamus case, as follows: "The Constitution invests the board under such regulations as may be provided by law with the direction, control, disposition, and care of all state lands. (Art. 18, Sec. 3; Art. 7, Sec. 13.) A large discretion has been conferred by statute upon the board in the matter of leasing and sale of state lands. (Chaper 79, Laws of 1890, 1891.) Section 16 authorizes the board to lease any legal subdivision at an annual rental of not less than five per centum per annum on the valuation thereof fixed by the board; and Section 22 provides that 'The board shall lease all state lands in such manner and to such parties as shall inure the greatest benefit and secure the greatest revenue to the state.' Section 44 is as follows: 'The board may herein determine the claims of each person who may claim to be entitled, in whole or in part, to any land owned by this state. The decisions of the board shall be final until set aside by a court of competent jurisdiction. The board may establish such rules and regulations as in its opinion may be proper to prevent fraudulent applications being granted.' * * * * The exercise of the power conferred upon the board to lease the lands of the state in the manner and to parties which shall inure to the greatest benefit and secure the largest revenue to the state, requires judgment and discretion. No inflexible rule is laid down for the guidance of the board in those matters. The judgment and discretion to be exercised is judicial in character, and in an application for the writ of mandamus it is not proper for the court to interpose its opinion and judgment in the place of that of the board, even if the conclusion which the latter has reached upon the facts should appear to have been erroneous." The sections of the statute mentioned in that opinion are still in force though slightly modified and are embodied in Sections 609 and 615, Compiled Statutes, and are applicable by their terms to the leasing and disposal of school as well as state lands. At the time the lease here in controversy was granted there was but one applicant therefor. The board was not called upon to pass

upon any questions other than the form and information contained in the application and evidence in support thereof as bearing upon the applicant's right to lease.

In the application and the evidence in support thereof by witnesses the following question appears and answer made thereto, viz: "State who, if any one, occupies land within one mile of the tract applied for, giving section number, township and range?" Ans. "No one." The evidence is undisputed that Johnson's homestead, houses and buildings are and were on the NE¼ of the SE¼ of Section 6, Tp. 35, R. 82, and 1,400 or 1,500 feet from the reservoir at the time of the application for this lease, and within one mile of each quarter section of the land covered by the lease. Mr. Johnson's evidence is uncontradicted that years before the application for the lease was made his dwelling houses had been constructed on his homestead and occupied part of the time as a home for himself and family, and that it has always been occupied either by his family or by men in his employ, and that the corrals thereon were used in working and caring for his stock. It thus appears that the land covered by Johnson's homestead was occupied by him, i. e., in his possession (Webster's New International Dictionary) for many years and was so occupied at the time of the application for the lease, yet it is stated in the application therefor that no land was occupied within one mile of the land sought to be leased. Basing Beck's and his assignee's right to the lease upon the application presented to the board, it is evident that the lease was granted upon incorrect information as to the occupancy of the Johnson homestead. It was the duty of the applicant to place the board in possession of the facts called for showing the true situation with reference to the homestead. (Sec. 609, Comp. Stat.) Such information might have an important bearing on the amount of obtainable revenue for the lease. It is provided by Sec. 618, Comp. Stat. 1910, that "Any lease for state lands procured by fraud, deceit or misrepresentation may be cancelled by the board upon proper proof thereof." It will be observed that

this statute is permissive, but not compulsory, though doubt-
less in a proper case it would be the board's duty to cancel
the lease. The proof of course must be submitted to the
board, and it acts thereon in a judicial capacity. We think
it not obligatory on the board to cancel the lease in contro-
versy unless damage to the state is shown in the way of
rental or otherwise to have been sustained. Johnson had
no application before the board to purchase or lease the
land at the time it was leased to Beck. In his petition filed
with the board to contest the lease he bases a preference
right in part on the ground of his water right and reservoir
site. As to whether he had such water right and reservoir
site was a question without the jurisdiction of the board
and it appears that the object of the contest was to secure
from the board a recognition of such ditch right and res-
ervoir site and upon such recognition a cancellation of the
lease. It was not necessary to cancel the lease to protect
any vested water right and reservoir site existing at the
time the patent issued to the state for the patent would be
subject thereto and the lease from the state as already
stated would be limited to the state's title. The sections of
the U. S. statute, supra, were intended to and would protect
such vested rights, if any, independent of any recognition or
want of recognition by the board, for the latter could only
deal with the title conveyed to it by the patent as construed
and affected by the acts of Congress in effect at the time
of the issuance of such patent. (Weil on Water Rights
(3rd Ed.), Sec. 257; Chicago, B. & Q. R. Co. v. McPhil-
lamey (Wyo.), 118 Pac. 682, 684.) Conceding that the
information furnished in the application for the lease with
reference to the occupancy of the Johnson homestead was
untrue, then there is still an absence of showing that the
state has been damaged thereby, nor has any unconditional
offer or willingness on the part of Johnson been shown to
pay the same or more rental than that paid by Beck or his
assignee. It is true that in his petition filed with the board
setting forth his grounds of contest Johnson made an offer

to lease the land or any portion thereof provided such board had the right to require him to do so as a condition of recognizing his rights in the premises. As already stated, his ditch right and reservoir site vested, if at all, prior to the patent by the United States to the state and independent of any action by the board. His offer to lease was conditional upon the board having a right under the circumstances to require him to rent the land as a condition precedent to its recognition of the ditch right and reservoir site. This was not an offer to pay the rental value fixed or to be fixed by the board, but tendered an issue for trial, and not only so, but one without the jurisdiction of the board except in so far as it might enter into consideration in fixing the rental value of the land. It does not appear that any interest of the state or the contestant was injuriously affected by the apparent misrepresentation in Beck's application as to the occupancy of land within one mile of the leased tract. Johnson's contest and such application as he made to lease the land were instituted and made prior to the amendment of the statute in 1909, which statute as then amended declares a preference in case of a lease of state or school lands in favor of resident citizens of the state who reside nearest to the land applied for (Comp. Stat., Sec. 615), and the contest was decided by the board prior to the enactment of that statute. Johnson therefore could have claimed nothing in the contest under such statute, for it would not apply to him.

Our conclusion is that the state had the right to lease the land subject to Johnson's right, if any, to proceed and complete his reservoir, and whether he had such right or not is a question that could not be conclusively determined by the land board.

It follows that the judgment of the District Court declaring the lease invalid and setting it aside was error, for which the judgment should be reversed.          *Reversed.*

BEARD, C. J., and POTTER, J., concur.