WILLIAM HOWARD,

*Appellant and Respondent,*

vs.

MABEL E. LINDMIER,

*Appellant and Respondent,*

(No. 2454; February 21st, 1950; 214 Pac. (2d) 737)

80

For the appellant the cause was submitted upon the brief and also oral argument of Ewing T. Kerr, of Cheyenne, Wyoming.

For the respondent the cause was submitted upon the brief and also oral argument of Joseph Garst of Douglas, Wyoming.

## OPINION.

BLUME, Justice.

In this case the State Board of Land Commissioners, on May 5, 1949, awarded to Mabel E. Lindmier, a lease for Section 16, Tp. 34, R. 67 W. 6th P. M., pursuant to her application for such lease. William Howard, who had also applied for a lease for the same land, appealed from the action of the Board of Land Commissioners to the District Court of Converse County. That court reversed the action of the Board ordering the lease for the land to be awarded to William Howard. From that judgment, Mabel E. Lindmier has appealed to this court. In view of the manner in which this case was entitled in the court below, we shall, generally speaking, referred to William Howard as the plaintiff, or that in combination with his name, and refer to Mabel E. Lindmier as the defendant in the case.

The plaintiff for many years held a lease to Section 16 and to the East ½ of Section 8 of the same Township and Range. The last lease expired on January 1, 1949. He applied for a new lease to commence with

the date last mentioned. The defendant applied for a lease for the same land. With her application she filed a statement alleging that 60 acres of land on Section 16 was a good meadow on which hay was raised up to 1935, but that the plaintiff violated his lease by failing to make a crop report and by not paying a fair rental for the land. She stated further: "Additional meadows could be developed and maintained by the clearing of brush, leveling of some land, and the building of spreader dikes at selected sites along Harney Creek. * * * These additional meadows, if developed, would increase the value of this land, not only to the State, but to any tenant that might acquire the lease on this land in the future. The applicant has developed hay land upon other land lying along Harney Creek under exactly the same conditions." The Commissioner of Public Lands, hereinafter mentioned as the land commissioner, rendered his decision on the two conflicting applications, reciting that the plaintiff owns about 448 head of live stock; that defendant owns 42 head of live stock; that both parties own land adjoining the land sought to be leased; that he had given due consideration to all facts available; that the plaintiff is the old lessee, being the holder of an expiring lease; that he has all the qualifications required by law to entitle him to lease state-owned lands; that the defendant also has all the qualifications required by law to entitle her to lease state-owned lands; that both applicants have actual and necessary use for the land; that the preferential right which the plaintiff has, has been given due consideration. He then stated further: "Having given the facts and the law full consideration, the Commissioner is of the opinion that it is for the general benefit to the State and for the more complete development of the land to disallow the application of William Howard on Section 16-34-67 and allow the application of William Howard on E. ½,

Section 8, Township 34, Range 67. That it will inure to the greatest benefit to the State to allow the application of Mabel E. Lindmier on Section 16-34-67 and disallow the application of Mabel E. Lindmier on E. ½, Section 8-34-67." He made an order to that effect. On May 5, 1949, the Board of Land Commissioners approved the decision of the land commissioner.

Both parties herein own considerable land adjoining, and in the vicinity of, the land in controversy here. On the same day on which the leases herein were awarded, the Land Board also awarded to the plaintiff a lease for additional 940 acres of land, making a total award to him on that date of 1260 acres and of 640 acres to the defendant. It appears that the latter never had had any lease on any state land, while the plaintiff has had a lease on Section 16 herein mentioned and perhaps also on the other land since about the year 1916, or for the period of 32 or 33 years. We do not know whether these matters had any bearing on the letting of the leases herein, nor need it be determined whether they should have. At least the main reason why Section 16 above mentioned was leased to the defendant was evidently the fact that the Land Board wanted part of the land converted into meadow or hay land, which, while the matter was heard before the Board, the plaintiff refused to do. He wanted to leave the land in sagebrush and common grass. The defendant on the other hand agreed to convert part of the land into hay or meadow land.

We held in Banzhaf and Banzhaf vs. The Swan Company, 60 Wyo. 201, 148 P. 2d 225 following previous cases that the trial "de novo" as mentioned in Section 24-306, Wyo. Comp. St. 1945, is simply limited to a determination on the part of the District Court whether on the facts proven there was "an illegal exercise" of the Board's discretion, a case of fraud, or a

"grave abuse of discretion." It was also stated that the discretion of the Land Board should not lightly be overturned. That rule has been almost uniformly followed in this state from an early day commencing with Cooper vs. McCormick, 10 Wyo. 379, 69 P. 301. Our latest case on the subject (though involving a somewhat different question) is Mayor vs. Board of Land Commissioners, 64 Wyo. 409, 192 P. 2d 403, decided in 1948, which re-examines and approves the rule above mentioned. The various statutes on the subject and the latest amendments thereto were set out in full, so that we do not deem it necessary to do so here. The opinion was expressed as to the latest amendments that: "it would seem that the legislature was endeavoring to enlarge the discretion of the Board in its disposal of school lands under said Section 24-113, if possible."

There is no fraud involved in the case at bar, nor any illegality in the proper sense of that term. So the question remains as to whether or not the Land Board was guilty of an abuse of discretion. Counsel for plaintiff contends that the court found the facts against the defendant and since the trial was de novo (Sections 24-306 and 24-308, Wyo. Comp. St. 1945), that finding is conclusive and will not be reviewed by this court. We considered that to some extent in Sullivan Co. et al. vs. Meer, 58 Wyo. 90, 102, 125 P. 2d. 168. But that was a different kind of a case. The contention here made by counsel for the plaintiff is substantially the same as that made in Miller vs. Hurley, 37 Wyo. 344, 262 P. 238, in which the contention there made was overruled. Even if the court comes to a different conclusion than that of the Land Board, considering the evidence as a whole, that in a case like that at bar is in no sense conclusive. The court must go further. It must be able to determine that the Land

Board might not reasonably, under the same state of facts, have come to a different conclusion; in other words that the Land Board abused its discretion. The point was considered in the case of Manning vs. Perry, 48 Ariz. 425, 62 P. 2d 693, in which the court had under consideration the leasing of public lands as in the case at bar. The court stated: "While the superior court on an appeal from the Land Department tries the case *de novo,* it should not be forgotten that the court is not the agency appointed by law to lease state lands. The legislature has vested that power in the Land Department. If it investigates and determines which of two or more applicants appears to have the best rights to a lease, its decision should be accepted by the court unless it be without support of the evidence, or is contrary to the evidence, or is the result of fraud or misapplication of the law. The court may have the power to take evidence on that issue and to ignore the department's findings thereon and make its own independent findings, *yet the rule adopted and followed by appellate courts here and elsewhere of deferring their opinions as to the weight and credibility of the evidence to that of the trier of the facts in the first instance should be adhered to in land lease cases.* The Land Department is certainly as well qualified as the court to investigate and pass upon the conflicting claims of applicants for leases and determine which has the best right to the lease." (Italics supplied). Some of the courts have considered the question of trial de novo of a case originating with an administrative board from a constitutional standpoint, holding that administrative powers may not be delegated to the court. Thus we find it stated in 42 Am. Juris. 563 as follows: "It is a well-settled general principle that nonjudicial functions cannot be exercised by or imposed upon courts, and statutes which attempt to make a court play a part in the administrative process

by conferring upon it administrative or legislative, as distinguished from judicial, functions may contravene the principle of separation of powers among the different branches of our government." The question of trial de novo was considered in California Co. vs. State Oil and Gas Board et al., 200 Miss. 824, 27 So. 2d 542. In that case the statute provided that the matter should be tried de novo by the circuit court and that the circuit court should have full authority to approve or disapprove the action of the Board. The court, upholding the constitutionality of the statute insofar as possible held: "we are of the opinion that an appeal to the Circuit Court with authority 'to approve or disapprove the action of the board' may be upheld by limiting its authority in that behalf to the right to conduct a hearing to the extent only of determining whether or not the decision of the administrative agency is supported by substantial evidence, is arbitrary or capricious, beyond the power of the Board to make, or violates some constitutional right of the complaining party." And it has been said that the term "substantial evidence" does not include the idea of weight of evidence, although it is more than a mere scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Gateway City Transfer Co. vs. Public Service Com'n., 253 Wis. 397, 34 N. W. 2d 238. In the case of De Mond vs. Liquor Control Commission, 129 Conn. 642, 30 Atl. 2d 547, it appears that the statute provided for a trial de novo in connection with the hearing before a Liquor Board. The court stated, referring to a change of the law and the requirement of a trial de novo: "Evidently the requirement that there be a trial de novo was intended to change this method of determining an appeal from the liquor control commission. *The issue is still, was there legal and reasonable ground for its action;* but the court, in

reaching its decision, is not confined, as heretofore, to the facts actually or assumed to have been proven before the commission; it conducts an independent inquiry. In this sense only is the trial de novo. * * * the court cannot, on an appeal, substitute its discretion for that vested in the liquor control commission." (Italics supplied).

The ultimate fact then to be found by the court in a case like that at bar is as to whether or not the Board abused its discretion, and there must be satisfactory evidence to show that, in order to comply with the rule that the decision of the Land Board should not be lightly overturned, considering at the same time that plaintiff has a preference right, if any. The term "abuse of discretion" has been variously defined. See 1 Words and Phrases under that term. Thus it was said in Sharon vs. Sharon, 75 Cal. 1, 16 P. 345, 366: "In a legal sense discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all the circumstances before it being considered." In State vs. Ferranto, 112 Ohio St. 667, 148 N. E. 362, 367, it was said: " 'Abuse of discretion' is a discretion exercised to an end or purpose not justified by and clearly against reason and evidence." Briefly speaking, the court, in order to overrule the Land Board, must have evidence before it to show that the conclusion of the Board was wrong and unreasonable. See Puterman vs. Puterman 66 Wyo. 89, 205 P. 2d. 815.

Considerable testimony was introduced on both sides as to whether 60 acres of Section 16 had at one time become converted into meadow or hay land but had been neglected by the plaintiff. That fact, however, is of no or of slight importance and we doubt that either the land commissioner or the Land Board paid any attention to that matter. The real question in dispute in this case is as to whether or not part of the land

in controversy could and ought to be converted into meadow or hay land, or that at least a trial be made in that direction. The court decided that question in the negative. But as already heretofore stated, that was only one of the steps in reaching a decision herein. The further inquiry was as to whether or not the Land Board could reasonably demand of the lessee to make such conversion or at least make an honest effort in that direction.

It appears herein that Harney Creek runs the whole length north and south through Section 16 here in controversy. It is ordinarily a dry creek but has flood waters running within it. Defendant who owns land to the south and along the same creek has converted 100 acres of grazing land into meadow or hay land by means of what are called spreader dams and dikes. She offered, before the Land Board, and in her testimony in the trial before the court, to convert 160 acres of Section 16 in controversy, into hay or meadow land, by the same means, stating that spreader dams and dikes are not too expensive. The husband of defendant testified substantially as she did. The witness, C. W. Hauf, testified that 175 acres of Section 16 could well be thus converted. He stated among other things, referring to spreader dikes and ditches: "It is a practice becoming quite popular all through the West, and even now, today, out on the range we are building dams and spreader ditches and even the gullies take in the water at the flood stage, spread water out over the sagebrush to make it grow more grass." The plaintiff, Howard, testified that Section 16 had always been in sagebrush and common grazing grass; that he would much prefer to keep the land as it was; that it was more valuable to him in that way. He appeared before the Land Board on May 5, 1949, and when asked whether he would undertake to convert part of the

land into hay or meadow land, he refused to do so. He grudgingly testified that he would do so if forced, although he attempted to show that only 25 or 30 acres of the land at most could be put into meadow or hay land. The offer which the plaintiff made in the trial of this case was, we think, altogether too late. It would not be fair to the Land Board to have its decision reversed on a point on which a party takes a position in the trial of a case before the court exactly opposite to that which he took before the Land Board. He ought not to be able to benefit by his neglect unless that is excusable and it was not excusable in this case. His conduct was deliberate. See California Co. vs. State Oil and Gas Board et al., supra.

The land belongs to the state. It is let to lessees by the Land Board. Courts have no right to do so. If state land is converted into meadow or hay land, the state receives 50 cents an acre as rental, whereas grazing land brings 5 to 15 cents an acre. Hence, the Land Board has the right, if it is not its duty, to cause the conversion hereinabove mentioned to be made, if possible. Even the possibility of that being done is properly within range of facts to be considered by the Land Board. Experimenting often leads to fine results. The federal government as the testimony shows encourages the conversion of grazing land into hay or meadow land wherever possible and it can hardly be questioned that generally speaking, hay and meadow land is more valuable than land which is kept in sagebrush, although in individual cases when a man needs no hay, that might be different. In view of the facts here related, it would seem to be clear that the Land Board, in determining what was for the best interest of the state, had the right to let the land to the defendant in spite of the preference right which the plaintiff had, since that right is not absolute. Kerri-

gan vs. Miller, 53 Wyo. 441, 84 P. 2d 724. We might again incidentally refer to the fact that the parties heretofore, in addition to asking for a lease on Section 16, supra, both also asked for a lease on the East ½ of Section 8 of the same Township and Range which corners with Section 16. Harney Creek does not flow through that land and the land commissioner, as well as the Land Board in that connection, respected the preference right of plaintiff Howard, granting him the lease on that land, thus emphasizing the due discretion which they exercised. We find no evidence in the record that the Land Board acted unreasonably and no evidence which borders on an abuse of discretion. The judgment of the trial court must accordingly be reversed.

We think we should say incidentally that we know of no tribunal of the importance of the State Land Board of this state which ordinarily keeps in contested cases, such fragmentary records as does that Board. That is due doubtless to the custom established long ago so that no blame can be laid at the door of the present officials or the officials acting in this case. But it is not a good custom. Some of the records which we have had before us in the past were better than others. The record in the case at bar, approved by the Land Board, is not any too good. In view of the fact that the legislature has provided for an appeal from the Land Board to the courts, we suggest that —except perhaps insofar as the record of the land commissioner already shows the facts—it keep records in accordance with its dignity and importance, letting them show in contested cases at least a summary of the facts and circumstances shown before it and in accordance with which it acted and the reasons for its action. That would seem to be not only just to itself but may often save an appeal to the courts. It was

only through the records made in the trial court that we were able to ascertain the facts before the Land Board on which it acted and based its decision in this case. It was said or suggested in Bucknum vs. Johnson, 21 Wyo. 26, 36, 127 P. 904, that certain questions may be presumed to have been passed on by the Land Board, but even so, the matter would be left in a state of uncertainty.

The judgment of the trial court is reversed with direction to affirm the action of the Board of Land Commissioners in awarding a lease upon the land in controversy to the defendant.

*Reversed.*

RINER, C. J., and KIMBALL, J., concur.