356 P.2d 135 (1960)
In the Matter of the Application by L. N. HAGOOD for Oil and Gas Leases, Application Nos. 5262-C and 5263-C, S½ Sec. 16 and W½ Sec. 36, T. 43 N., R. 74 W.
L. N. HAGOOD, Appellant (Appellant below),
v.
TEXAS PACIFIC COAL AND OIL COMPANY, Appellee (Appellee below).
No. 2940
Supreme Court of Wyoming.
October 18, 1960.
*136 L. N. Hagood, pro se, and W. A. Cole, Casper, for appellant.
Frank M. Gallivan, Cheyenne, and Gorsuch, Kirgis, Campbell, Walker & Grover, and Fred A. Deering, Jr., Denver, Colo., for appellee.
Before BLUME, C.J., and PARKER and HARNSBERGER, JJ.
Mr. Justice PARKER delivered the opinion of the court.
This is a dispute between applicants over the right to be awarded State oil and gas leases on undeveloped lands formerly held by one of them. On October 16, 1947, the Texas Pacific Coal and Oil Company, hereafter called the company, leased from the State of Wyoming the S ½ sec. 16 and W ½ sec. 36, T. 43 N., R. 74 W., sixth principal meridian, Campbell County. This transaction was effected by two separate instruments, Lease Nos. 0-4693 and 0-4694, each of which contained a provision that the term should be for ten years after the date. Both leases were amended in 1951 to provide that they should be in effect for a primary term of ten years and so long thereafter as oil and gas might be produced in paying quantities. Before October 16, 1957, the end of the ten-year period, the company applied for a new lease at the same rental of twenty-five cents per acre; and within the time provided by Rule 8(a)[1] Hagood filed applications for leases of the same land, offering fifty cents per acre and a lease acquisition bonus of three dollars per acre. The commissioner of public lands considered the matter and rendered his decision, recommending the issuance of the leases to the company and the disallowance of the Hagood applications. In his decision the commissioner recited that both applicants were qualified to lease the lands in question, that the company had preferential rights as the old lessee, and that it had not been the policy of his office to require an applicant having preferential rights to meet higher bids when he had spent considerable sums of money in the area for exploration or development. Hagood appealed the commissioner's decision to the board of land commissioners, urging that the legislature had eliminated preferential rights and presenting *137 testimony as to the activities of each of the applicants with the amounts each had offered. The company appeared by counsel and participated in the examination but presented no evidence. The order issued by the board was brief and general, stating merely that the commissioner's decision was upheld. Hagood then appealed to the District Court of Campbell County where the matter was heard in accordance with § 36-27, W.S. 1957. The company appeared with witnesses who testified at some length, over the objection of Hagood, as to prospecting and drilling activities in the county. Witnesses for the company admitted that no drilling activities or prospecting had been done upon or near the land in question but said that it had performed such work in the same geologic province. Hagood appeared by attorney, examined the witnesses, and presented argument but submitted no evidence. The order (judgment) affirmed the decision of the board, upholding that of the commissioner, and recited generally that the company was the holder of a lease, had not violated same, had paid the rentals thereon, and was qualified to receive leases of State lands; that the commissioner and the board had not abused their discretion by refusing to order the company to meet the higher rental of Hagood; that the company had actual use for the lands; and that the rental offered was reasonable and not out of proportion.
Hagood has appealed to this court, listing some fourteen points on which he intends to rely, most of which indicate the aspects in which the decisions of the board and district court were allegedly illegal and improper. He raises two principal contentions, that the company had no preferential right as the old lessee and that the decision of the board and the district court constituted illegal exercise of discretion, grave abuse of authority, and fraud upon the State of Wyoming. We must then first determine whether or not the company as a lessee had a preferential right of renewal, and such determination can be made only in the light of pertinent legislation both past and present.
The Act of Admission passed by Congress in 1890 provided in § 5:
"That all lands herein granted for educational purposes shall be disposed of only at public sale, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools. But said lands may, under such regulations as the legislature shall prescribe, be leased for periods of not more than five years, in quantities not exceeding one section to any one person or company * * *." 26 Stat. 222.
This section was amended by Act of Congress on February 15, 1934, accepted, ratified, and confirmed by the Wyoming legislature February 6, 1935, § 1, c. 34, S.L. of Wyoming, 1935, so that the second sentence above quoted then read:
"But said lands may, under such regulations as the legislature shall prescribe, be leased for mineral, grazing, agricultural, or other purposes, provided that the term of agricultural and grazing leases shall not exceed 10 years; mineral leases including leases for exploration for oil and gas and the extraction thereof for a term not longer than ten years * * *."
The section was again amended by Congress on October 5, 1949, accepted, ratified, and confirmed by the Wyoming legislature February 18, 1951, § 1, c. 137, S.L. of Wyoming, 1951, and the second sentence now reads:
"But said lands may, under such regulations as the legislature shall prescribe, be leased for mineral, grazing, agricultural, or other purposes, provided that the term of agricultural and grazing leases shall not exceed 10 years * * *."
The statute relating to the authority of the board of land commissioners to issue mineral leases in effect at the time of the company's original lease, November 25, *138 1947, was § 24-701, W.C.S. 1945, which read:
"The board of land commissioners is hereby authorized to lease for a term of ten (10) years, with the preferential right in the lessee to renew his lease for successive periods of ten (10) years, any state or school lands supposed to contain coal, oil or minerals, and to make and establish rules and regulations governing the issuance of such leases and covering the conduct of development and mining operations to be carried on thereunder."
This section was amended by § 1, c. 157, S.L. of Wyoming, 1951, so that the pertinent part read:[2]
"The Board of Land Commissioners is hereby authorized to lease any or all lands granted to the State for educational purposes, for oil and gas for a primary term up to ten (10) years, and as long thereafter as oil or gas may be produced in paying quantities, and to extend the term of existing oil and gas leases in good standing for as long as oil or gas may be produced in paying quantities * * *."
Hagood contends that the preferential right mentioned in § 24-701 was abolished by c. 157, S.L. of Wyoming, 1951. He argues further that the company's leases by the June 28, 1951, agreements for the change in the term were entirely subject to the amended statute which abolished the preferential right. The company on the other hand urges that it had a preferential right to new leases for three reasons, i.e., the amended statute did not prohibit such right; the board was justified in granting a preference in its own discretion, especially in the light of its practice and regulations; and in any event, there could be no retroactive application of the 1951 statutory amendment so as to deprive the company of the rights which it had under the 1947 leases.
We cannot agree entirely with the contentions of either party. The legislature by failing to mention the preference right in the 1951 amendment of the statute did not abolish the right but did remove any authority therefor previously extended. It is true that the board in the exercise of its discretion has broad powers, but we find no precedent indicating that such an agency may by the pronouncement of a policy grant preferences for which there is no constitutional or statutory authority. The board at the time of its decision had a rule[3] which purported to grant a preferential right for renewal of leases to old lessees in accordance with §§ 21-122 and 24-701, W.C.S. 1945, but it ignored the fact that these statutes had been amended and no longer authorized such preferential right for oil and gas leases. Therefore, the only basis for the board's extending a preferential right of renewal to the company was that growing out of the 1947 leases drawn at a time when the statute authorized preferential rights of renewal. It is well settled that laws which subsist at the time and place of making of a contract, and where it is to be performed, enter into and become a part of it as though expressly referred to and incorporated in its terms. Von Hoffman v. City of Quincy, 4 Wall. 535, 71 U.S. 535, 18 L.Ed. 403. And see Black & Yates. Inc. v. Negros-Philippine Lumber Co., 32 Wyo. 248, 231 P. 398, 37 A.L.R. 1487; 12 Am.Jur. Contracts § 240; 17 C.J.S. Contracts § 330. But see 3 Corbin, Contracts, 1951, § 551. It is likewise settled that a statute may not be applied retroactively so as to deprive contracting parties of their rights. Wyo.Const. art. 1, § 35. And see State ex rel. Lynch v. Board of County Com'rs, 75 Wyo. 435, 296 P.2d 986; Mustanen v. Diamond Coal & Coke Co., 50 Wyo. *139 462, 62 P.2d 287; 2 Sutherland Statutory Construction, 3d ed., pp. 126, 127; 82 C.J.S. Statutes § 414. Nevertheless, in the instant situation, the company and the board on June 28, 1951, after the removal of the preferential right from the statute in question re-executed § 2 of the leases relating to the term, thereby surrendering any preference which it was entitled to claim under the 1947 leases. The new provision had the effect of executing new leases[4] as of June 28, 1951, at a time when there was no authority either by statute or rule for preference of renewal. Whether or not a later instrument constitutes a new lease or merely a modification of a prior lease is a question of intent deducible from the circumstances and especially from the instrument;[5] but here the title of the statute mentioned in the amended paragraphs of the leases provided for "extending the term of leases of state and school lands for oil and gas"; and it would seem inequitable to allow the lessee under such circumstances to have the benefits of both the old and the new statute.
From what we have said, the company was entitled to no preferential right of renewal. Since the order recited that "The board upheld the Commissioner's Decision allowing the application of Texas Pacific Coal and Oil Company and disallowing the applications of L.N. Hagood," the commissioner's decision must have been adopted in toto. Adverting then to the commissioner's findings, which are in fact the board's findings, it was stated that:
"The Texas Pacific Coal and Oil Company has preferential rights as the old lessee.
* * * * * *
"It has not been the policy of this office to require applicant having preferential rights to meet higher bid when he has spent considerable sums of money in the area for exploration or development."
Even had the statutes or rules warranted the granting of a preferential right to an old lessee, the board would not have been entitled to grant such right without consideration of evidence concerning the facts and circumstances surrounding the past or proposed development of the property; and its so doing would have been an abuse of discretion. One of the main contentions of Hagood in his appeal to the district court was the impropriety of the board's granting the preferential right, and his counsel prior to the introduction of evidence asked for findings on all eight issues outlined in the pretrial order which included the matter of preference.[6] No finding as to the existence of a preferential right was made by the court, and a motion to amend the judgment to include such finding was summarily dismissed without argument. Thus, the board not only resolved the case without considering the facts necessary to a determination of a preferential right but the court avoided any review of the matter on the pivotal issue before the board. Although a district court in deciding an appeal under § 36-27 ff., W.S. 1957, is entitled to determine whether the decision of the board was illegal, fraudulent, or a grave abuse of discretion, and in so doing is not confined to the facts actually or assumedly presented to the board but may conduct an independent inquiry,[7] it may not enlarge the issues before the board.[8] Here the judgment *140 of the trial court turned upon the statement that "the Order of the Board of Land Commissioners, awarding the lease to Texas Pacific Coal and Oil Company, was not an illegal or fraudulent exercise of its authority, nor did it constitute a grave abuse of the Commissioner's discretion," without reference to the principal contention that the company had no preferential right of renewal. It follows, therefore, that the judgment of the trial court must be reversed.
Whether or not the board might from a consideration of all the facts relating to both applicants have considered that a leasing of the land to the company would have inured "to the greatest benefit to the State"[9] unfortunately cannot be determined since no testimony was there presented as to the rights of the company growing out of its prospecting and development work in the area. From all that appears, the board not only failed to give this any consideration, but adopted the arbitrary pronouncement of the commissioner as to the "policy" of his office.
The prerogative of the board to grant the type of lease here discussed, growing as it does out of constitutional authority,[10] is so important and the discretion of the board is so broad that it ought to be exercised under every possible safeguard, not only to those who would litigate matters before the board but to the citizens of the State. This is particularly true in view of the fact that courts have repeatedly declined to encroach upon the discretion of the board. Miller v. Hurley, 37 Wyo. 344, 262 P. 238. Accordingly, we think that the present case illustrates several shortcomings which should be remedied:
(1) The board of land commissioners has promulgated no rules or regulations of procedure as is contemplated by the legislature. Section 36-17, W.S. 1957.
(2) The board apparently requires no pleadings by those appearing before it as is intended by the legislature. Section 36-29, W.S. 1957.[11]
(3) The board made no findings of fact and conclusions of law in its own right but by inference adopted the findings of the commissioner. We think that the board should make such findings and conclusions, thereby providing an opportunity for an orderly appeal to the courts consistent with the existing statutes as they have been interpreted.[12]
(4) The record in this case indicates the procedure often followed by litigants of presenting one philosophy before the board and another before the trial court.
The equities between the parties as well as the greatest benefit to the State of Wyoming require that this cause be remanded to the district court with directions to return the same to the board of land commissioners for proceedings consistent with the views herein expressed.
Reversed and remanded.
BLUME, C.J., concurred in the result.
NOTES
[1] Rules and Regulations Governing the Issuance of Mineral Leases, March 1, 1956.
[2] This portion was amended by § 1, c. 84, S.L. of Wyoming, 1955, by striking the words "or all lands granted to the State for educational purposes" and substituting therefor "State or State School lands."
[3] Rule 8(b), Rules and Regulations Governing the Issuance of Mineral Leases, March 1, 1956.
[4] Thurber v. Clark, 154 Wash. 485, 282 P. 911.
[5] Peterson v. Betts, 24 Wash.2d 376, 165 P.2d 95.
[6] The statement of findings is mandatory upon request of one of the parties before the introduction of evidence. Rule 52(a), Wyoming Rules of Civil Procedure.
[7] Howard v. Lindmier, 67 Wyo. 78, 214 P.2d 737.
[8] This was true as announced in Bucknum v. Johnson, 21 Wyo. 26, 127 P. 904, when the predecessor of § 36-29, W.S. 1957, allowed the court in its discretion to have additional evidence adduced at the trial. There is even more reason for adherence to the rule when § 36-29 provides, "Unless otherwise ordered by the court, said appeal shall be heard upon the pleadings filed before the board of land commissioners and at the trial of such appeal, evidence shall be taken and other proceedings had as in the trial of a civil action before said court."
[9] Rule 1, Rules and Regulations Governing the Issuance of Mineral Leases, March 1, 1956.
[10] Wyo.Const. art. 18, § 3.
[11] Technical rules of pleadings are somewhat relaxed in proceedings before administrative bodies. State ex rel. Smith v. Smith, 197 Or. 96, 252 P.2d 550; De Martini v. Industrial Accident Commission, 90 Cal. App.2d 139, 202 P.2d 828; Public Utilities Commission v. Weicker Transp. Co., 102 Colo. 211, 78 P.2d 633. We think this is particularly true when a litigant acts without counsel.
[12] Generally on the subject of findings by administrative agencies see 2 Davis, Administrative Law Treatise, 1958, p. 435 ff., and cases cited in the American Digest System, Administrative Law, Key number 485.